[Civil No. 2942. Filed January 26, 1931.]

[295 Pac. 314.]

THE NEW YORK INDEMNITY COMPANY, Appellant, v. N. D. MAY and CALANTHA MAY, His Wife, Appellees.

Messrs. Moore, Elliott & Shimmel, for Appellant.

Messrs. Holzworth, McNabb & Phillips, for Appellees.

LOCKWOOD, J.—N. D. May and Calantha May, his wife, hereinafter called plaintiffs, brought suit against New York Indemnity Company, a corporation, hereinafter called defendant, and Guaranty Building & Finance Company, hereinafter called the

contractor, on an obligation guaranteeing the performance of a certain written contract of the latter. The case was tried to a jury, and separate verdicts rendered in favor of plaintiffs against defendant and the contractor in the sum of $12,000 each, and, from the judgment rendered on the former verdict and the order denying defendant's motion for a new trial, the latter has taken this appeal.

Taking the evidence in the strongest manner in favor of plaintiffs, as we must do under the verdict of the jury, the facts essential to a determination of this case may be stated as follows:

On December 31st, 1928, plaintiffs entered into a certain building contract with the contractor for the construction of a store building and some bungalows. This contract was not signed, however, until on or about January 4th, 1929, and at that time the contractor furnished an indemnity bond with one J. L. Walker as surety in the sum of $5,000, conditioned in the usual form for the faithful performance of the contract. At the same time plaintiffs and the contractor entered into a written agreement to the effect that Walker would be released from his bond if the contractor within ten days secured another surety on the bond satisfactory to plaintiffs.

The building contract actually executed provided a contract price of $14,200, payable in advance, $ 3,500 of which was to be paid by the transfer of certain negotiable securities owned by May, and $11,700 by the execution of a mortgage upon the property upon which the buildings were to be constructed. Out of this $14,200 the contractor was to pay $1,200 balance due from May upon the lots, and the same amount for furniture to be placed in such buildings; the balance being compensation for the erection of the buildings themselves. These securities were delivered to the contractor on the 4th of January, and thereafter sold and assigned by it to one Wyn Wylie.

Shortly after the execution of the contract, the contractor applied to defendant herein for a surety bond, to be used to replace the Walker bond. The application was for a $5,000 bond upon a $10,700 contract, an alleged copy of the contract being submitted with the application, dated January 4th, and purporting to be signed in script by plaintiffs and the contractor. The provisions in regard to the payments to be made, however, were entirely different from those set up in the contract actually executed by plaintiffs and the contractor, and the alleged contract contained no reference to the amount to be paid on the lots or for furniture.

Plaintiffs had no connection whatever with the application for the bond, nor did they know anything about the change in form of the contract submitted. It appears from the evidence that the contractor had a new form of contract drawn and the Mays' names signed thereto by someone, and delivered it to defendant, alleging that it was the true one. After some investigation defendant executed a typewritten document which we quote in full as follows:

"Bond New York Indemnity Company.

"Know all men by these presents:

"That we, Guaranty Building and Finance Company, of the County of Maricopa, State of Arizona, as principals and New York Indemnity Company as surety, are held and firmly bound unto N. D. May and Calantha May, or their assigns, for which payment, well and truly to be made, we bind ourselves, our heirs, executors, administrators, jointly and severally firmly by these presents.

"Sealed with our seals, and dated the 16th day of January, 1929.

"The condition of the above obligation is such that, whereas, the Guaranty Building and Finance Company has this day contracted and agreed with the said N. D. May and Calantha May to furnish all the labor and material necessary to construct, in good, substantial and workmanlike manner, a six unit

bungalow and garages for eight car and store building and connected residence:

"Work to be done in strict accordance with the plans, specifications and a contract executed between the above parties, bearing even date with this. Said contract is made a part of this Bond, and to which reference is made for a more complete description of the terms and conditions of the same.

"The express conditions of the above obligation is that the said Guaranty Building and Finance Company shall finish the work above on or before the 3rd day of May, 1929 as per contract.

"Then this obligation is to be void and of no effect, otherwise to remain in full force and virtue.

"[Seal.] GUARANTY BUILDING AND FINANCE COMPANY,

"By FRANK S. STALEY,

"Sec. & Treas.

"Manager.

"[Seal.] NEW YORK INDEMNITY COMPANY,

"By D. F. JOHNSON,

"Attorney-in-fact."

There were no blank spaces in the instrument, nor anything which would indicate there had been something omitted, unless the language used might be held to suggest it.

This instrument was delivered by defendant to the contractor and by him to May. The latter submitted it to his attorney for an opinion, and, upon the advice of the latter that it was a good bond, May surrendered the Walker bond to its maker. The contractor started upon the construction of the buildings in question and employed May to perform various services in connection with the construction as timekeeper, and he acted in such capacity until the contractor abandoned its contract on April 18th, 1929.

Some time prior to its abandonment, May had learned that some of the material bills had not been paid, and so notified defendant's agent. On June 6th, 1929, the contractor having defaulted, and defendant not offering to take over the contract, May

moved on the premises and completed the buildings, finishing the job approximately August 1st, 1929. Some time thereafter plaintiffs brought suit against defendant and the contractor on the written obligation above set forth, claiming damages which, including trial amendments, amounted to a little over $20,000. At the conclusion of the evidence the court struck one item of $6,000, reducing the amount of damages claimed to approximately $14,000, and the case was submitted to the jury on an instructed verdict for $12,000 as against the contractor, and on the issues joined as to defendant. The verdicts as rendered were each in the amount of $12,000, and, after judgment was rendered and the motion for a new trial denied, this appeal was taken.

There are some eighteen assignments of error, which we will consider according to the legal propositions raised. The first relates to the validity and efficacy of the agreement above set forth. It is urged by defendant that the instrument in question is both in name and in law a bond; that it is essential to the existence of a bond that it contain an obligation which is an undertaking by the obligor to pay *a specific sum of money* to the obligee; that a bond will be void in which the amount of penalty is omitted, and a judgment on such bond cannot be sustained, as the omission is a defect which cannot be supplied by oral proof of the amount intended. Let us determine first the nature of the obligation.

The old rule was that obligations of guaranty or suretyship were *strictissimi juris*, and were to be construed strictly in favor of the surety or guarantor. This was laid down at a time when the obligor was almost always a volunteer for the accommodation of the principal and the obligee, and under those circumstances the rule had justice and reason back of it. In such cases the instrument was generally prepared by the principal and the obligee, the surety having nothing to do but affix his name thereto. Of modern

times, however, an entirely different practice has grown up. Corporations have been organized for the express purpose of assuming liability as guarantors or sureties for the purpose of profit to themselves and not for the accommodation of others. In such cases the obligation is almost invariably prepared by the surety, or at least carefully scrutinized by its attorneys before it is signed. Under such circumstances, the more modern, and we think the better, rule is that the obligation is construed strictly as against the surety and in favor of the obligee, and that it is in effect a contract of insurance. *Van Buren County* v. *American Surety Co.,* 137 Iowa 490, 126 Am. St. Rep. 290, 115 N. W. 24; *Champion Ice etc. Co.* v. *American Bonding & Trust Co.,* 115 Ky. 863, 103 Am. St. Rep. 356, 75 S. W. 197; *People* v. *Rose,* 174 Ill. 310, 44 L. R. A. 124, 51 N. E. 246.

The case was tried on the second amended answer of defendant. Therein it admitted the execution of the instrument, but nowhere did it claim, except perhaps by inference, that a mutual mistake had been made in the terms thereof, nor did it ask for its reformation in accordance with the true understanding of the parties thereto. Had the latter been the issue presented by the pleadings in the trial court, a very different situation would have arisen. On the contrary, however, the defense pleaded was based solely on the theory that the contract, the performance of which it had insured, was the one given it by the contractor, and that such contract had been so breached by plaintiffs that it was released from any liability whatever. It cannot now in this court deny that the instrument in question was knowingly and intentionally executed by it in the precise terms which appear on its face, and since, as we have stated, sureties or guarantors for profit are held to a strict interpretation of the contract against them and in favor of the obligee, we think it should not now be permitted to deny liability thereon if a reasonable construction of

its terms shows a valid contract of any nature. On reading the instrument carefully we are of the opinion 'that its natural and legal interpretation under these circumstances is that it is not, technically speaking, a bond, requiring a fixed penalty, but that defendant for a consideration became a surety for the faithful performance of the contract secured by its terms, and that its liability was covenanted to be coextensive with that of its principal. Such a contract obviously can have no precise limit of liability expressed therein, for not until the building contract is completed or breached can the extent of the liability of the principal be determined. This being the case, if it is liable at all upon its contract such liability is not affected by the fact that no amount of penalty is stated therein. We know of no rule of law forbidding such a contract, and any other construction would in effect permit the surety to plead and prove its own fraud.

We consider next the effect of the changed contracts. The jury under proper instructions on that point found by its verdict that the only contract executed by plaintiffs, or of which they had any knowledge, was the one providing for payments in the precise manner in which they were made, to wit, by delivery of certain securities 'to the contractor. Defendant knew that its agreement was to indemnify plaintiffs for a contract between them and the contractor dated January 4th, for, while the contract of suretyship recites the building contract was of even date, there is sufficient evidence to sustain a finding on the part of the jury that defendant was advised it was actually dated January 4th. Before executing its contract, it was the duty of defendant to satisfy itself as to the true terms of the building contract referred to therein. In order to hold plaintiffs responsible for the alleged building contract delivered to defendant by the contractor, it must appear either that it was the true one, or that plaintiffs knew of the

misrepresentation and participated therein. *Watkins Medical Co.* v. *Montgomery*, 140 Ark. 487, 215 S. W. 638; *Western N. Y. Life Ins. Co.* v. *Clinton*, 66 N. Y. 326; 50 C. J. 61. There is not one scintilla of evidence in the record that either of these conditions existed. Under the evidence we are of the opinion that the jury was justified in finding, as it must have to support its verdict, that the only true contract was the one relied on by plaintiffs, and that they had no knowledge of the fraudulent one. Defendant is therefore bound for the performance of the true contract.

The next proposition raised by defendant is that there was a material variance between the payments provided by that contract and those actually made. We have examined the contract carefully, and are of the opinion the record shows the payments were made in strict accordance therewith.

The next objection is that no evidence was introduced showing the contractor was a corporation, or that its contract was signed by it or under any authorization by it. This is an objection that could be raised, if at all, only by the contractor, and not by defendant on the state of the pleading. 14 C. J. 228.

It is urged also that the evidence introduced could not under any theory sustain a verdict for plaintiffs. There are a number of points presented by the defendant on this proposition. The first is that under the contract it is a condition precedent to recovery against either contractor or surety that the plaintiffs offer evidence showing that the architect audited the expenses incurred by the owner in finishing the building. We have examined the contract, and are of the opinion that the provision requiring such action applies only to cases when the owner takes over and completes the building against the will of the contractor, for alleged failure of the latter to do the work according to the contract, and not to cases where he has voluntarily and totally abandoned the contract.

It is next claimed there is no evidence that the alleged liens set up as an element of damages were legal charges. It appears in the record that it was admitted by counsel for defendant that all of the liens pleaded were filed at the proper time, that they were for goods actually furnished, and that the bills had not been paid. It is, of course, the rule of law that, when an owner voluntarily pays claims which are not legally enforceable against the property, he cannot recover for such claims against the guarantor. *Fuqua* v. *Tulsa Masonic Assn.*, 129 Okl. 106, 263 Pac. 660. We are of the opinion, however, that the admissions made by counsel for defendant establish a *prima facie* liability of the property for the liens, and were sufficient to take the matter to the jury.

So far as the other items pleaded are concerned, there was sufficient evidence to sustain a verdict in an amount greater than that found by the jury, and we need not consider them *seriatim.*

We next consider the instructions. The only serious complaint on this point is that the court failed to instruct the jury as to the elements and measure of damages. The only instruction on this point which appears in the record reads as follows:

"There is in evidence a bond in this case executed by the New York Indemnity Company introduced as plaintiff's C in evidence, and under and by virtue of the terms of that bond, the defendant New York Indemnity Company has covenanted that the Guaranty Building and Finance Company will perform its part of the contract in accordance with the terms and provisions thereof, that that shall be done on or before the 3rd day of May, 1929; and under the provisions of said bond, if the defendant Guaranty Building and Finance Company failed to perform its part of said contract in accordance with the terms and conditions contained therein, the defendant New York Indemnity Company is liable to the plaintiff for such failure on the part of the Guaranty Building and Finance Company to so perform said contract; and if you should find that such contract, building contract, was

breached, and that the plaintiff has been damaged thereby, then it is your duty to award to the plaintiff such damages as you may believe that he has suffered by reason of such breach, that is, to award such damages against the New York Indemnity Company.''

This, though correct as far as it goes, is by no means a complete instruction as to the measure of damages, and, did nothing else appear, we should feel compelled to hold under the previous decisions of this court that it was error for the trial court to limit its instructions on damages to this statement, and that such error was prejudicial. We find, however, from the record, that, after completing the instructions to the jury, the trial court said, addressing counsel, ''Do you gentlemen think of anything that I have overlooked?'' and that counsel for defendant then called the court's attention to further instructions he desired as to the mechanics' liens and damages for faulty construction of the premises, and some other matters. These requests were discussed at some length by the court and counsel, but no other request was made for more complete instructions as to the measure of damages.

We are of the opinion this was a waiver by defendant of any more complete instruction on that issue. While it is the duty of the trial court so to instruct the jury that they may have sufficient law to enable them to arrive at a correct conclusion, the respective parties have also a duty in the premises, and that is to assist the court to instruct properly, and not, either intentionally or unintentionally, to mislead it. When, as in this case, the court asks counsel in substance if they desire any further instructions, we are of the opinion that a failure to request them is a waiver of an objection that the instructions given did not fully state the law. This does not, of course, prevent an objection in the appellate court that the instructions given by the trial court are incorrect, but

it does waive an omission of an instruction otherwise necessary.

The instruction of the court in regard to damages to the effect that plaintiff was entitled to recover "such damages as you may believe he has suffered by reason of such breach" was undoubtedly correct, the only error being the failure to explain fully how they should arrive at the damages. For the foregoing reasons we are of the opinion that the failure of the court to instruct more fully on the issue of damages was waived by defendant.

The other errors assigned are not sufficiently serious to need discussion. On the whole case we are of the opinion there is no prejudicial error sufficient to require a reversal of the judgment of the trial court, and it is therefore affirmed.

McALISTER C. J., and ROSS, J., concur.