[Civil No. 2958.   Filed February 2, 1931.]

[295 Pac. 321.]

T. T. SPANN, F. B. JONES and E. E. READING, Appellants, v. H. L. MEIDINGER, Appellee.

Mr. L. C. McNabb, for Appellants.

Mr. W. F. Dains, for Appellee.

LOCKWOOD, J.—H. L. Meidinger, hereinafter called plaintiff, brought suit against T. T. Spann, F. B. Jones and E. E. Reading, hereinafter called defendants, for damages resulting from the alleged false representations of Spann. The case was tried to a jury, which returned a verdict in the sum of $500 in favor of plaintiff, and, from the judgment rendered on such verdict and the denial of the motion

for new trial, defendants have appealed. The facts of the case, stated most strongly in behalf of plaintiff, as they must be under the verdict of the jury, appear to be as follows:

Spann is a duly licensed real estate salesman, and Jones and Reading are sureties on his statutory bond as such. Some time in the spring of 1928 one James E. Perkins, who was at that time the owner of forty acres of real estate located in the Salt River Valley, executed two promissory notes in the amount of $650 each, and a third note of $500 in favor of one J. T. Christian. The $650 notes were secured by a realty mortgage on the forty acres above referred to, and the $500 note was secured by a mortgage on certain personal property described as follows:

"All of the undivided one-half of the crop to be grown during the season of 1928, on the Southwest Quarter of the Southwest Quarter of Section Fifteen, Township Two N., Range One E., of the Gila and Salt River Base and Meridian, containing 40 acres, more or less, according to the U. S. Government Survey."

Christian was desirous of selling the notes, and employed Spann as his broker for that purpose. Plaintiff was the owner of certain real estate known as No. 2333 North Thirteenth Street, Phoenix, Arizona. Spann and plaintiff entered into negotiations which finally culminated in the sale to Christian by plaintiff of his real estate, part of the payment therefor being the $500 note secured by the chattel mortgage above referred to. In the course of the negotiations a question arose as to the condition of the crop covered by the chattel mortgage, and Spann made certain representations regarding it upon which this suit is based. We shall quote them at the proper time.

About the middle of May plaintiff desired to sell the $500 note to another party, who before the sale was consummated wished to look at the crop covered

by the mortgage. Upon examining the land in question, it appeared that no such crop had ever been planted. Thereafter plaintiff brought this suit.

The essential elements of a suit for deceit are that the representation upon which the suit is based (1) was made as a statement of fact; (2) that it was untrue; (3) that it was known to be untrue by the party making it, or else recklessly made; (4) that it was made with intent to deceive and for the purpose of inducing the other party to act upon it; (5) that he did rely and act upon it; and (6) that he was damaged thereby. Let us test the facts of the case in question by these elements.

The specific representations upon which plaintiff relies are found in the reporter's transcript, and were made during a conversation between plaintiff and Spann before the deal was closed, at the former's house. Plaintiff himself testified as follows:

"We talked about it again and I told him I didn't have time to go out and see the place—she was rushing me for the house and I was busy—and if the place was being put in crop and I was satisfied with the contracts all right because they were secured by the land, but the crop mortgage, I wanted to be sure the crop was in there and he said I didn't need to worry about that, *that the man was putting it in* and it was all right." (Italics ours.)

Plaintiff's wife, his stepson and a guest overheard part, at least, of the conversation. His wife testified that Spann stated as follows:

" 'You needn't worry about the place, *we have a man out there now plowing,* and they are fixing the place, everything is all right, Mr. Meidinger.' Those are the exact words he said." (Italics ours.)

His stepson's testimony was that Spann said "he had a good renter on it and that he was *at that time plowing it with a tractor.*" (Italics ours.)

The guest testified as follows:

"Mr. Spann was telling Mr. Meidinger about the forty acres outside of Phoenix and that it was in— that there was a man on the place and he had a tractor *and was plowing the ground*, the man was using the tractor and getting ready to plant cotton on it." (Italics ours.)

We are of the opinion that the jury from this testimony could properly have found that there was a representation as a matter of fact that a man was actually engaged in plowing the land with a tractor at the time the statements were made, and not merely, as suggested by defendant, that a man who had a tractor was considering plowing the land.

The second question is, Was the statement true or false? Again referring to the reporter's transcript, the testimony of plaintiff is as follows:

"Q. I will ask you whether or not there had been any plowing done? A. Hadn't been a furrow plowed in it."

This was supported by the testimony of the witness Leonard:

"Q. I will ask you whether or not there had been any plowing done on the premises? A. No, not that spring."

We are of the opinion this was sufficient for a finding by the jury that the representation that the land was actually being plowed was false.

Was the statement known by Spann to be untrue, or was it recklessly made? Knowledge as a rule in cases of deceit must be determined by inference, and not by direct evidence. Spann was a licensed real estate dealer, and presumably knew his duty in regard to the necessity of avoiding misrepresentations. He knew from plaintiff's questions that the condition of the crop was a material element of the transaction. We are of the opinion the jury could properly have

found that the statement was recklessly made at least, if not known to be untrue.

It is obvious also that it was made for the purpose of inducing another party to rely upon it, for the record shows that plaintiff would not have taken the note unless he had believed the crop was being put in. Plaintiff's testimony is positive to the effect that he did rely upon it.

The last question is whether or not he was injured by his reliance. It is urged on behalf of defendants that the complaint alleges that Perkins, the maker of the note, was insolvent and unable to pay, and that it was incumbent upon plaintiff to establish that he was unable to collect the amount from Perkins on the note before he could rely upon the false representation in regard to the mortgage. We are of the opinion that this position is not well taken. It appears in the evidence that Perkins was no longer a resident of Arizona at the time the note became due, but was living in California. Even had he been residing in Arizona, however, we think that plaintiff was entitled to rely upon the mortgage lien for his security rather than to resort to a personal action which might or might not produce the money, and, since it appeared the mortgage had failed, there was no obligation upon him to attempt a personal action against Perkins before resorting to his action for deceit. *Bradford* v. *Neill,* 16 Minn. 347, 49 N. W. 193; *Baker* v. *Maxwell et al.,* 99 Ala. 558, 14 South. 468.

The foregoing disposes of the errors assigned by defendants.

The judgment of the superior court is affirmed.

McALISTER, C. J., and ROSS, J., concur.