(No. 21080.—

GEORGE A. JENNINGS, Defendant in Error, vs. CALUMET NATIONAL BANK, Trustee, et al. Plaintiffs in Error.

*Opinion filed April 23, 1932.*

PEDEN, MURPHY & RYAN, (THOMAS J. PEDEN, JOHN C. MELANIPHY, and GERALD RYAN, of counsel,) for plaintiffs in error.

McKINNEY, LYNDE & GREAR, (WILLIAM E. DEVER, of counsel,) for defendant in error.

Mr. COMMISSIONER EDMUNDS reported this opinion:

George A. Jennings filed a bill in the superior court of Cook county to restrain Joseph J. McCarthy and the Calumet National Bank, trustee, from installing and operating a certain gasoline tank to be used as part of and in connection with a gasoline filling station on the premises known as the southwest corner of East Seventy-ninth street and Jeffery avenue, Chicago. Defendants filed answers and the cause was referred to a master, who recommended that the bill be dismissed for want of equity. The trial court sustained certain exceptions to the master's report and entered a decree granting the relief prayed. This decree was affirmed by the Appellate Court for the First District, and the cause is here on *certiorari.*

East Seventy-ninth street runs east and west and Jeffery avenue runs north and south. The plaintiff in error bank owns lots 1, 2, 3 and 4 on the southwest corner of the intersection. Lot 1 fronts on both of said streets and the other lots lie in numerical order to the west and front on East Seventy-ninth street. Their length is 110 feet. Lot 1 is 33.6 feet wide and lots 2, 3 and 4 are 25 feet in width. Plaintiff in error McCarthy leased said lots from the bank and on August 22, 1928, made application to the city of Chicago to install a tank to contain 1000 gallons of gasoline,

the premises upon which it was proposed to make such installation being spoken of in the application by street number, as "rear 1951 East Seventy-ninth street" and designated as the west 24 feet of the south 25 feet of lot 4. On the northeast corner of the street intersection lies property owned by the Catholic Bishop of Chicago and occupied by Our Lady of Peace parish. The distance from this property to the northeast corner of lot 4 is 163.51 feet. The distance from this property to the northeast corner of the area designated as the west 24 feet of the south 25 feet of lot 4 is 213.29 feet. The portion of lot 4 thus designated is 151 feet from the north line of East Seventy-ninth street, 150.6 feet from the east line of Jeffery avenue and 158.6 feet from the east line of Euclid avenue, the first north and south street west of Jeffery avenue. A distance of 150 feet from the boundaries of lot 4 itself would extend 94 feet beyond the north line of East Seventy-ninth street and six inches beyond the east line of Jeffery avenue. The property owned by defendant in error fronts on Euclid avenue. It is distant 67.5 feet from the southwest corner of lot 4 and is occupied by him as a residence.

The bill is based fundamentally on the theory of a violation of section 2279 of the municipal code of Chicago, which provides: "It shall be unlawful to install any tank or tanks for the storage of any of the liquids mentioned in section 2277 in any lot or plot of ground without first obtaining the written consents of the property owners representing the majority of the total frontage in feet of any lot or plot of ground lying wholly or in part within lines 150 feet distant from and parallel to the boundaries of the lot or plot of ground upon which said tank or tanks is or are to be installed; provided, however, that for the purpose of this ordinance only the frontage of any such lot or plot of ground or that part of the frontage of any part or [of] such lot or plot of ground as comes within the 150-foot limit herein prescribed shall be considered; and further pro-

vided, that any and all petitions containing such consents of property owners shall be based on and contain the legal description of the property affected. No such tank or tanks shall be installed in any lot or plot of ground where any of the boundaries of any such lot or plot of ground are within 200 feet of the nearest boundary of any lot or plot of ground used for a school, hospital, church or theater. These provisions shall not be applicable to the installation of a tank or tanks containing any of the oils referred to in section 2277 when such oils are to be used in connection with garages or manufacturing plants where such oils are incidental to the business conducted or oils used for fuel purposes; provided further, that for the purposes of this ordinance, whenever the lot or plot of ground in which such tank or tanks is or are to be installed is in any shape other than a rectangle, the 150-foot limiting line aforementioned shall not exceed in distance 150 feet from any point in the boundaries of such lot or plot of ground." The main issue presented is whether or not under this ordinance plaintiffs in error can insist that the measurements upon which necessary frontage consents and distances to schools, hospitals, churches or theatres are based must be made from the boundaries of the small area of lot 4 designated on the application for permit.

In arguing the intention of the ordinance to be that computation of the distances referred to therein is to be made from the boundaries of the 24 by 25 area thus designated, plaintiffs in error stress the fact that the ordinance uses the language "lot or plot of ground," and they refer to a definition of a "plot" in Webster's International Dictionary as a "small or not large area of ground" as sustaining their contention that the city council in using the term had in mind and meant to designate an area such as they referred to in their application.

In *Standard Oil Co.* v. *Kamradt,* 319 Ill. 51, this court was called upon to construe an ordinance almost identical

with the one in the case at bar. While we were not required in that case to deal with the precise issue now before us, we did lay down the rule which must govern in weighing the words of the ordinance. We there said: "It is said that whenever the meaning of a word used in a statute or ordinance becomes a subject of controversy in a legal proceeding, the ascertainment of its strict primary signification is not so much a matter of importance as the sense in which it was used by the legislative body, and that the latter must control even though the word has been used without regard to its appropriate and primary meaning, where such intention appears from the act or ordinance. This is the rule." This being so, even though the primary signification of the term "plot" be held to be as plaintiffs in error contend, that fact would not necessarily be decisive. That such is its proper primary signification is by no means certain. A "small or not large area of ground" is, in the last analysis, a purely relative expression. In New York the term "plottage" is in common use as designating an element to be considered in determining the value of land which it is sought to condemn. By way of defining the term the court said in *In re Armory Board*, 72 N. Y. Sup. 37: "By that term is meant the added value which a plot has against the aggregate value of the several lots which compose it. * * .* The increased value which accrues to the owner of several adjoining lots composing a plot of land inures to the land irrespective of the buildings thereon." It cannot be said that this judicial characterization of "plot" is at variance with the definition of Webster. By the same token it cannot be said that an area of 24 by 25 feet in dimension, comprising part of a platted lot 25 by 110 feet in dimension, is necessarily a "plot" as distinguished from some area considerably greater in extent.

We are not in accord with the contention of plaintiffs in error as to the construction of the ordinance. It is clearly within the police power of the city to provide by ordinance

for the regulation and prevention of the storage of coal oil, naphtha, benzine, petroleum or any of the products thereof and other combustible or explosive material. (*Klever Karpet Kleaners* v. *City of Chicago*, 323 Ill. 368.) The ordinance here deals with products highly inflammable and explosive in their nature. Not only does it make unlawful the installation of any tank "where any of the boundaries of any such lot or plot of ground are within 200 feet of the nearest boundary of any lot or plot of ground used for a school, hospital, church or theatre," but it prohibits the installation of any tank "in any lot or plot of ground" without first obtaining certain frontage consents. Manifestly, at least one purpose in passing it was to promote the public safety. In its requirements for the securing of frontage consents it was "based on the idea that the storage of inflammable material tends to depreciate the value of neighboring property." (*Standard Oil Co.* v. *Kamradt, supra.*) The words "lot or plot of ground" are not used with reference to the land containing the tank, alone. They are used with reference to the holdings of those who must sign frontage consents. They are used, likewise, with reference to the boundaries of the land occupied by schools, hospitals, churches and theatres. That the ordinance contemplates that such institutions may occupy "plots" of ground is indisputable. That churches, schools, hospitals and theatres in the city of Chicago may, and often do, occupy ground areas many times as large as a space 24 by 25 feet, or even larger than the area represented by all four of the lots at the southwest corner of East Seventy-ninth street and Jeffery avenue, is a matter of common knowledge. That the council had in mind to protect lives and property which might be found on relatively large ground areas designated as "plots" is clear. There is consequently more reason to assume that when it used the term "plot" it meant to designate a ground area which might be larger than ordinary single platted lots than that

it intended to refer to a mere small portion of a single lot. A further observation which may be made is, that if, as asserted by plaintiffs in error, the council intended the computation to be made by using the boundaries of the space immediately surrounding installed tanks as the basis, there would have been no occasion whatever for employing the term "lot" with reference to tanks or for referring to any other basis for measurement than the tanks themselves.

We cannot hold that the applicability of the ordinance restrictions was intended to hinge upon the number of inches or feet of lot 4 that the owners saw fit to designate in the application as constituting the immediate repository for the tank, and especially is this clear where the contents of the tank to be installed are, as in the present case, to be employed as the basis for a business to be conducted upon the remainder of the lot.

Plaintiffs in error insist that unless their contention as to the construction of the ordinance is accepted it must be declared to be unconstitutional. They argue that unless the basis for measurement here be the area which they designated, and that unless lot owners in applying for permits can designate such small portions of their holdings as they choose, the ordinance becomes unreasonable and owners of larger lots are discriminated against. They cite in support of their argument *People* v. *Village of Oak Park,* 331 Ill. 406, and *People* v. *Andrews,* 339 id. 157. In the *Oak Park case* an ordinance attempted to define what was a residence district based on the number of buildings located within the district, without reference to the frontage of the lots upon which the respective buildings are located. The ordinance was held to be invalid when applied to the particular facts and circumstances in that case because it produced an arbitrary and oppressive result and prevented the erection of a filling station in a section of the city devoted to commercial pursuits, and which, considering property frontage instead of the number of buildings, could be classed as a business

section. In the *Andrews case* we held that an ordinance providing that before a gasoline filling station can be erected on any lot where two-thirds of the buildings within a radius of 300 feet are used exclusively for residence purposes written consent of a majority of the owners of all buildings within such radius must be obtained, is unreasonable in basing the consent on the number of buildings within the district regardless of their character or size or the size of the lots upon which they are located. There can be no question as to the soundness of the conclusions thus reached, but, taking into account the objects to be accomplished by the ordinance in the case at bar, the means provided for their accomplishment and all existing conditions and circumstances, we are of the opinion that even though it be not construed to intend the granting of a permit to plaintiffs in error, it is not unreasonable and is not subject to the objections which obtained in the *Oak Park* and *Andrews cases.* It is general in its character. Lots and other platted areas of ground vary in size in the city of Chicago. There can be no claim that it does not accord the same treatment to all those of the same dimension, and the council acted within its power in passing the ordinance.

Plaintiffs in error contend that conceding their construction of the ordinance to be unwarranted, there was no violation of its provisions so far as the church property was concerned. The master found that the premises at the northeast corner of East Seventy-ninth street and Jeffery avenue were used for a church within the meaning of the ordinance. This finding is challenged on the ground that the structure on the northeast corner lot fronting on East Seventy-ninth street and Jeffery avenue is a rectory, and that the church building itself is on another lot over 200 feet from the northeast corner of lot 4. The church property consists of seven adjoining lots. In the record is a photograph showing the premises. It discloses a group of buildings apparently connected with each other, and along the

south side appears an ornamental iron fence. The testimony indicates that while the structure on the corner lot is used as a rectory, other buildings in the area are used as a church, school and convent. In support of their position plaintiffs in error cite *First Congregational Church* v. *Board of Review*, 254 Ill. 220, which holds that a church parsonage is not "property used exclusively for religious purposes" and therefore is subject to taxation. That holding is not conclusive here. The language found in the ordinance is, "any lot or plot of ground used for a school, hospital, church or theater." No "exclusive" user is prescribed, and if it be held that "used for a church" necessarily means used for congregational assembly or worship, thereby making it impossible to say that the corner lot itself is used for a church, it may still be argued that we are dealing with a "plot of ground," and that the ordinance means in this connection not merely the area physically occupied by a church structure but the land that complements it and is devoted to its use. It is unnecessary, however, to decide the question as to whether the ordinance was violated from the standpoint of the church property. Plaintiffs in error did not secure the necessary frontage consents of surrounding property owners, and for that reason the permit should not have been issued.

Plaintiffs in error contend, nevertheless, that the tank was not a nuisance; that defendant in error cannot maintain his bill without proving that he suffered special damage from its installation, and that the evidence does not warrant the finding of the chancellor that such special damage was sustained. There is at least some question as to whether, under the circumstances of this case, defendant in error is bound to establish by any other evidence than the ordinance itself that he has suffered special damage. In *Griswold* v. *Brega*, 160 Ill. 490, where an ordinance provided that wooden buildings could not be moved into certain places without obtaining consents from property holders,

it was pointed out that the ordinance recognized the special injury which would result from its breach to those owning adjacent property and that a property owner could maintain a bill for an injunction. In *Dunne* v. *County of Rock Island,* 283 Ill. 628, it was held that under a statute making it unlawful to erect a county jail within 200 feet of any building used exclusively for school purposes the owner of such a school building could maintain a bill to enjoin the erection of a jail in violation of the act. We said: "The complainant had a right to maintain his suit under the act in question, which was passed for the protection of property used for school purposes, because a violation of the act would inflict a special injury and damage upon the owner. * * * In this case there is a threatened injury, and if the act is valid a prohibition against such injury exists and the appellant may enforce it." As we have already pointed out, this court said in *Standard Oil Co.* v. *Kamradt, supra,* referring to an ordinance similar to that in the present case, that it was based on the idea that the storage of inflammable material tends to depreciate the value of neighboring property. Such conclusion is inescapable. The property of defendant in error lies only 67.5 feet from the tank itself. It is well within the area prescribed by the ordinance as marking the limits to which the depreciating effect of storage tanks for inflammable materials extends. The ordinance has been violated and defendant in error has strong reason to insist that special injury thereby results to him, conferring upon him the right to maintain the present bill.

Regardless of the question as to whether breach of the ordinance in itself can be said to inflict special damage upon defendant in error, we are of the opinion that the finding that such damage would result is well warranted by the evidence. Four real estate men who were familiar with the neighborhood and had dealt in property there, testified that the conduct of a filling station on the southwest corner of

East Seventy-ninth street and Jeffery avenue would depreciate the value of the property of defendant in error from five to twenty per cent, basing their opinions on the elements of added noise, fire and explosion hazards, glare from headlights and the presence in the air of fumes.

Plaintiffs in error argue that this testimony has no place in the record because it takes into account the proposed filling station and is not based upon the presence of the tank, alone. With this argument we cannot concur. In view of the language of the ordinance itself that "these provisions shall not be applicable to the installation of a tank or tanks * * * when such oils are to be used in connection with garages," etc., it seems apparent that its application to a given case is dependent upon the use to be made of the contents of the proposed tank. On the original application made for a permit to install the tank it was stated that it was to be used to store gasoline to be re-sold from a filling station to which it would be pumped. Such frontage consents as were obtained were sought for the installation of a tank for the "sale or storage" of inflammable liquids. The permit issued bears a notation that the tank is to be used for a filling station. Without question it is proposed to employ the tank as the foundation for operations shown to inflict special injury upon defendant in error. The chancellor cannot be asked to so far disregard the substance of things that he must base his conclusion upon what is, in effect, an abstraction. The issue before him was not whether plaintiffs in error might bury a tank in the ground and fill it with gasoline. It was rather whether they might use such tank as the basic part of a business of purveying inflammable liquids to the public. *Standard Oil Co. v. Kamradt, supra.*

Plaintiffs in error argue that defendant in error was guilty of *laches* and that great hardship will result to them unless the bill is dismissed. The argument is based largely upon certain obligations incurred for architect's fees and

under a contract let to build the filling station. Installation of the tank was commenced late in the afternoon of November 3, 1928. On November 6 thereafter counsel for defendant in error served a written notice upon plaintiff in error McCarthy in the form of a registered letter. Among other things the letter stated: "You are further notified that on behalf of such clients we will take all steps necessary and proper to prevent the construction of such a tank or filling station upon the property in question contrary to the ordinances of the city of Chicago. We give you this notice so you may not expend any time, money or effort in such construction." It does not appear that any work was done on the property after the tank was installed until the first week in February thereafter, when a contractor who on January 26 had signed the contract to build the filling station began to fill in the lots. The bill was filed February 11 thereafter. No physical move being made on the property after the notice of November 6 was given, it might well be said that defendant in error was as much warranted in the belief that the warning was being heeded as plaintiffs in error were in the idea that such opposition as there might have been had been abandoned. Within a few days after a further open move was made the bill was filed. We would not be warranted in holding that defendant in error is barred by *laches*.

By the decree plaintiffs in error are perpetually restrained from using the tank for the storage of gasoline to be used in connection with the filling station proposed to be operated upon lots 1, 2, 3 and 4. It is insisted that this relief is too broad and that the decree does not take into account the possibility that plaintiffs in error through compliance with the ordinance might qualify themselves to operate the filling station. Under the evidence disclosed by the record plaintiffs in error do not have a right to maintain the tank in connection with the business proposed. A decree restraining them from so doing is proper and is not

120

out of order in not attempting to anticipate contingencies not founded on the evidence and which might never occur.

The judgment of the Appellate Court is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Edmunds is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*