CHARLES D. OFFHOUSE ET AL., PETITIONERS, v. STATE BOARD OF EDUCATION AND BOARD OF EDUCATION OF THE CITY OF PATERSON, DEFENDANTS.

Argued October 6, 1943—Decided April 10, 1944.

·Before Justices PARKER, HEHER and PERSKIE.

For the petitioners, *Eisenberg & Spicer.*

For the defendant Board of Education of the City of Paterson, *Harold D. Green (Saul R. Alexander,* of counsel).

The opinion of the court was delivered by

HEHER, J.   Petitioners, 314 in number, are either teachers, principals or supervisors in the public school system of the City of Paterson who are under the tenure prescribed by *R. S.* 18:13–16 and 18:13–17.   On March 5th, 1941, they filed a joint petition of appeal with the State Commissioner of Education alleging that the district board of education had refused to conform to a salary schedule prescribed by a rule of the board adopted on July 14th, 1927, in the exercise of the authority conferred by *R. S.* 18:13–5.   The rule provided for the payment of fixed annual salary increments until the stated maximum salary had been reached.   The Commissioner dismissed the petition.   The State Board of Education affirmed the judgment.   Mr. Justice Colie denied *certiorari;* and the application is renewed here.

The decisive question is whether this annually progressive salary schedule of 1927 remained in force at the time the jurisdiction of the State Commissioner was thus invoked. The schedule was observed until May 12th, 1932, when the local board, by resolution, ordered a 5% reduction of the salaries of all of its employees.   And thereafter, during the school years 1933-34, 1934-35, 1935-36 and 1936-37, there were salary reductions ranging from 6% to 30%, pursuant to the statutes enacted to alleviate the financial stress con-

sequent upon the trade depression. *Pamph. L.* 1933, *ch.* 12, *p.* 24, *ch.* 449, *p.* 1247; *Pamph. L.* 1935, *ch.* 6, *p.* 16; *Pamph. L.* 1936, *ch.* 7, *p.* 17, *ch.* 27, *p.* 42. The reductions continued until October 14th, 1937, when the local board resolved that "all resolutions heretofore adopted and approved" by it, providing for "a reduction in the basic salary of the officers and employees of the Board * * * be rescinded as of October 1st, 1937;" and that "on and after October 1st, 1937, all officers and employees be paid the base salary in accordance with the terms of their employment, providing the aforesaid officers and employees waive all claims, demands, damages or liabilities, which they have had or now have for or on account of any and all reductions made or effected prior" thereto.

The Commissioner ruled that the "salary schedule became inoperative;" and the State Board concluded that other regulations limited "the right to increases in salary to those recommended by the superintendent [of schools] and the committee on education;" that "satisfactory service" is not sufficient in itself; that "the rules and regulations of a non-continuous body, such as a board of education, * * * do not bind successor boards unless they are expressly adopted or tacitly by acting thereunder;" and that the evidence conclusively demonstrates that "the several boards of education since July 1st, 1933, have not observed the rule relating to salary increases—in fact, by their disregard of such rule it may be said it was abrogated by 'negative action.'"

The contention made by petitioners is that the increments prescribed by the schedule of 1927 were conditioned solely on "satisfactory service," and hence they became a part of the individual teacher's salary so that non-payment of the increases accruing thereunder constituted a reduction in salary in contravention of *section* 18:13–17, *supra.* No claim is advanced for the reductions made during the years 1933 to 1937; but it is maintained that since July 1st, 1937, the petitioners have been, and hereafter will be, entitled to compensation on the basis of accrued increments under the regulation of 1927, in accordance with the number of their respective years of service, as if legislation authorizing salary

reductions during the years 1933 to 1937 had not been passed. We take a different view.

It is conceded that, by the term "base salary" in the resolution of 1937, the local board had in contemplation the salaries paid in 1932, before the first reduction became operative. It could hardly have any other meaning, for the "base salary" of the individual teacher at the time of the initial reduction included the increments which had then accrued. This understanding of the term was made manifest by the board's course of action following the adoption of that regulation. Thereafter, salaries were paid at the 1932 level until June, 1940, when teachers receiving an annual salary of $1,700, or less, were given what petitioners characterize as "an arbitrary increase of $100 each," while the salaries of all others continued at the 1932 rate. There have been no appropriations for increments since the passage of the resolution of 1932; and the superintendent of schools has since made no recommendations to the district board for salary increases in consonance with the schedule of 1927, although that had been the consistent practice theretofore. And there seems to have been no appeal by the petitioners from the action thus taken by the local board in 1937 until the instant proceeding was instituted.

The salary by-law of 1927 was repealed by implication. The reduction of salary effected by the resolution of 1932 was at the rate of 5% "of the salary received during the calendar year, 1932;" and the subsequent reductions were a fixed percentage of that salary, not of that salary enlarged by increments under the pre-existing schedule. The rule of 1937 provided merely for the payment of "the base salary in accordance with the terms" of the "employment," *i. e.,* the salary fixed in 1932 conformably to the then existing schedule, and not such salary as increased by annual increments. The base salary of 1932 was determined, in part, by the number of years of service. There is no indubitable expression of a design to revive the salary schedule of 1927. In all seeming, these by-laws of 1932 and 1937 were each designed to occupy the whole field embraced by the earlier rule, and so as a substitute therefor. Compare *Burlington* v. *Estlow,* 43 *N. J. L.*

13. And, if there be doubt as to this, we are aided by the construction put upon the rules by the successive boards charged with the administration of the school system in this district.

Contemporary exposition may be considered, and is ordinarily accorded great weight, where the language of a municipal regulation is of doubtful import and is not made plain by the context. The meaning attributed to the rule soon after its adoption by the authority charged with its enforcement is generally the best construction; and it will be accepted unless clearly wrong, especially where it has received the acquiescence of those affected by its terms. And a local or special act may be practically construed by the parties for whose purposes it was enacted, so as to induce an acceptance of their interpretation without reference to the length of the time covered by such practical construction. *Lewis' Sutherland Statutory Construction* (2d ed.), § 472.

Salary regulations by district boards of education are repealable. *R. S.* 18:13–5. Only accrued increments under a valid and subsisting regulation of the local board are beyond repeal. Unaccrued increments do not take the classification of "salary" within the intendment of *section* 18:13–17, *supra. Greenway* v. *Camden Board of Education,* 129 *N. J. L.* 46; *affirmed, Id.* 461. And, while in the view we take of the case there is no occasion to consider the point here, it is to be noted that this court has held that non-observance of a salary schedule "for many years" constitutes abrogation. *Liva* v. *Board of Education,* 126 *Id.* 221. See, also, *Weber* v. *Board of Education of Trenton,* 127 *Id.* 279. The last cited case is also invoked by petitioners. But there the opinion reveals "an express declaration of the local board not to abandon the salary schedule."

Lastly, it is urged that "the undertaking of the local board to pay salaries to the petitioners" under the regulation of 1927 "was contractual in nature, and the local board's alleged repeal or rescission of the schedule" therefore violates *article I, section* 10, *of the Constitution of the United States,* prohibiting the states from passing any law impairing the obligation of contracts.

The line of argument is that the relationship between teachers and the district boards must be evidenced either (1) "by rules and regulations adopted pursuant to *R. S.* 18:13–5," or (2) "by written contracts of employment executed in accordance with the provisions of *R. S.* 18:13–7;" and that the "same rule that would be applied had the local board contracted individually with the petitioners pursuant to *R. S.* 18:13–7, must be applied to this case, where the local board contracted collectively with the petitioners pursuant to *R. S.* 18:13–5." It is said, further, that where a local board has exercised the legislatively conferred "power to contract," it is "bound in the same manner that an individual is bound."

The point is plainly without substance. As to unaccrued increments, the provisions of the salary schedule are, by the very terms of the statute investing the district boards with authority to fix salaries, subject to repeal or alteration by the board itself. *R. S.* 18:13–5. Until the accrual, the modification or repeal of the rule providing for increments does not constitute a reduction of salary within the intendment of *R. S.* 18:13–17. A regulation providing for increments is a mere declaration of legislative policy that is at all times subject to abrogation by the local board in the public interest. *Greenway* v. *Board of Education, supra.* And it is now settled that *sections* 18:13–16 and 18:13–17 invest teachers and principals in the appointed category with a mere "legislative status," subject to legislative alteration and amendment, and does not give use to an irrepealable "legislative contract." *Section* 18:13–7, *supra,* is "but a regulation of the conduct of the board and not a term of a continuing contract of indefinite duration with an individual teacher." *Phelps* v. *Board of Education,* 115 *N. J. L.* 310; *affirmed,* 116 *Id.* 412; *affirmed,* 300 *U. S.* 319; 57 *S. Ct.* 483; 81 *L. Ed.* 674. Permanent tenure teachers are in the one category, however the employment relationship may have originated.

The petition is dismissed, with costs.