198 P.2d 134

**KUBBY v. HAMMOND.**

**No. 4980.**

Supreme Court of Arizona.

Sept. 27, 1948.

William C. Eliot and John M. Levy both of Phoenix, for appellant.

Jennings, Strouss, Salmon & Trask, of Phoenix, for appellee.

UDALL, Justice.

This is an appeal from a judgment perpetually enjoining and restraining the defendant, David Kubby (appellant), from constructing or operating an automobile wrecking plant on certain premises owned by him at 1333 East Washington Street in Phoenix, Arizona.

The essential facts are these: Defendant for some 2½ years prior to this litigation had been operating an automobile wrecking plant, as well as dealing in used cars, under a state license, at his established place of business, 1330 East Washington Street. In an expansion program, defendant acquired three lots (1333 East Washington Street) which lie directly south and across the street from his principal place of business. On May 20th, 1946, the division of Motor Vehicles, Arizona Highway Department, issued to defendant supplemental licenses to operate branches of both of said businesses at this newly acquired location. Immediately thereafter he moved a half dozen cars

thereon, which were intended for dismantling and sale of their parts. When notices were posted that defendant had applied for a permit to construct a temporary tin and wood office building on these premises plaintiff Hammond (appellee) on May 25, 1946, filed suit seeking an injunction to restrain defendant from constructing a building to be used as an automobile wrecking plant or from using the premises for such purposes. The gravamen of the complaint was that plaintiff is the owner of and has an established residence upon an adjoining lot lying west of defendant's premises, that all of this area was zoned for "Business B District Uses" by ordinance No. 1564 adopted by the City of Phoenix on June 25, 1930, and that the operation of the business proposed by defendant is in violation of and is not permitted under Section X of said zoning ordinance. Furthermore it was alleged that loud noises will result from the proposed use of said premises which will interfere with plaintiff's peaceable enjoyment of his home and cause a depreciation in the value thereof.

On July 9, 1946, the City Commission of Phoenix amended this zoning ordinance so as to place the defendant's property in a "Business A Zone", and concededly a wrecking yard could not thereafter lawfully operate in such zone unless the business had been commenced prior to the adoption of the amended ordinance.

Thereafter on August 12, 1946, plaintiff filed an amended complaint in two counts. The first count alleged substantially the same facts as the original complaint but added the fact of rezoning the area to "Business A Uses." The second count alleged the defendant's proposed business would constitute a nuisance. The prayer was for injunctive relief only, no damages being asked.

Defendant's motion to dismiss the amended complaint was denied and upon the issues framed by his answer this equity matter came on for trial before the court sitting with a jury. The two interrogatories submitted to them were answered by the jury favorably to the plaintiff's contention and after a denial of defendant's motions for judgment notwithstanding the verdict and for a new trial, the court entered judgment for plaintiff and the matter is now brought before us for review.

■ The trial court made no findings of fact or conclusions of law, though it adopted the jury's answers to the interrogatories. In the final analysis the decision was necessarily the decision of the court as the verdict of the jury is only advisory in an equity matter. Section 21-1010, A. C.A.1939.

■ It is, of course, the universal rule that all presumptions are in support of the judgment or decree, and the appellate court in reviewing the sufficiency of the evidence to sustain a verdict or judgment

will consider the evidence in the light most favorable to the successful party. Commercial Securities Corp. Consol. v. Babbitt Motor Company, 36 Ariz. 438, 286 P. 820; New York Indemnity Co. v. May, 37 Ariz. 462, 295 P. 314; Spann v. Meidinger, 37 Ariz. 480, 295 P. 321.

█ Where findings of fact have not been made the rule is that the judgment should be affirmed if there is any theory of the case upon which such judgment can be sustained and any reasonable evidence in the record supporting such theory. State Tax Comm. v. Magma Copper Co., 41 Ariz. 97, 15 P.2d 961; Morgan v. Krook, 36 Ariz. 133, 283 P. 287.

While the defendant (appellant) has presented some eleven assignments of error and seven propositions of law, we believe that these may be resolved into three questions: (a) Was the conduct of defendant's business of operating an automobile wrecking yard at 1333 E. Washington Street in violation of Section X of Phoenix City Ordinance 1564? If this question be answered in the negative then (b) was such business actually in operation between May 20, 1946, and the time when the area was rezoned on July 9, 1946, for "Business A District Uses"? (c) does the evidence sufficiently establish defendant's business as a nuisance? We shall consider these problems seriatim.

Section X of ordinance No. 1564 of the City of Phoenix reads as follows:

*"Business B District Uses:*

"(General commercial districts.) Within any 'Business B' District, no building, structure or premises shall be used and no building or structure shall be erected which is intended or designed to be used in whole or in part for *any industrial or manufacturing purposes,* except as specified in this section or for any other than the following specified purposes:

"(1) Any use hereinbefore permitted in 'Residence A', 'Residence B', 'Residence C' and 'Business A' Districts.

"(2) Other lawful business, such as offices, hotels, clubs without restrictions as to general use, theatres, assembly halls, news stands, billiard rooms, bowling alleys, public gymnasiums, hand laundries, mortuaries, animal hospitals, automobile salesrooms in connection with which may be maintained storage garages having no machinery other than service tools operated for repair purposes, service stations, public storage garages, *and other commercial activities;* provided, however, that there shall be no manufacturing or wholesale warehouses permitted." (Adopted June 25, 1930) (Emphasis supplied)

It is plaintiff's theory that the operation of an automobile wrecking yard constitutes an industrial pursuit or use as distinguished from the various businesses or commercial pursuits therein specifically referred to. On the other hand the de-

fendant contends that his business falls within the phrase "other commercial activities."

■ The word "industrial" has various meanings, and some definitions can be found that are favorable to either party. We believe however that in construing an ordinance the sense in which words are used is more important than the dictionary meaning. Jennings. v. Calumet National Bank, 348 Ill. 108, 180 N.E. 811. "Industrial Activity" commonly means the treatment or processing of raw products in factories. North Whittier Heights Ass'n v. National Labor Relations Board, 9 Cir., 109 F.2d 76–80. The real objective of defendant's business is the retail sale of second hand parts. It seems to us that "wrecking" a tearing-down process is practically the opposite of "industrial or manufacturing purposes" referred to in the ordinance heretofore quoted. To dissemble and wreck used automobiles requires but little skill while the manufacturing process generally speaking involves skill of a high degree.

An analysis of the quoted ordinance indicates that business "B" districts are general commercial districts and any commercial use not excluded therefrom by being specifically assigned to an industrial district is included. The doctrine of ejusdem generis has no application

■ We deem it significant that for seventeen years the officers of the City of Phoenix charged with construing and administering the ordinance in question have held that defendant's type of business was permitted in "Class B Business Districts." The record before us discloses several wrecking yards in such areas as well as the city car barns which are diagonally across the street from plaintiff's residence. In any doubtful case the court should give great weight to the contemporaneous construction of an ordinance by the officials charged with the duty of enforcing it. Sine v. City of Le Grande, 136 Or. 568, 300 P. 348; City of Sedalia ex rel. Ferguson v. Shell Petroleum Corp., 8 Cir., 81 F.2d 193, 106 A.L.R. 1327; Wilson et al. v. Behr, 57 Ohio App. 117, 12 N.E.2d 300; Offhouse v. State Board of Education et al., 131 N.J.L. 391, 36 A.2d 884; 37 Am.Jur.Mun. Corp. Sec. 187, p. 828.

■ Zoning ordinances, being in derogation of common law property rights, will be strictly construed and any ambiguity or uncertainty decided in favor of property owners. City of Little Rock v. Williams, 206 Ark. 861, 177 S.W.2d 924; 440 E. 102nd St. Corp. v. Murdock, 285 N.Y. 298, 34 N.E.2d 329.

■ The trial court did not expressly rule upon the legal question whether or not defendant's use of his newly acquired premises violated City Ordinance No. 1564, but inasmuch as only the interpretation of an ordinance is presented we are in nowise circumscribed by any presumption as to the trial court's views of the matter.

■ We answer the first question in the negative and hold as a matter of law that the general type of activity carried on by defendant in the operation of a wrecking yard is within that countenanced by ordinance No. 1564 for "Class B Business Zones."

■ If the defendant was actually operating his "wrecking" business at 1333 East Washington St. prior to July 9, 1946, when the City Commission rezoned this area for "business 'A' district uses" he would be entitled to continue such operation, for the amended zoning ordinance is not retroactive.

"If at the time of the enactment of this ordinance any lot, building or structure is being used in the manner or for a purpose which does not conform to the provisions of this ordinance and which is not prohibited by some other ordinance, such manner or use or purpose may be continued." (Ordinance 1564, City of Phoenix, Section 2637, Phoenix Municipal Code.)

Once a use is established prior to the adoption of a zoning ordinance or an amendment thereof, it may continue.

"Non conforming buildings and uses existing when an ordinance goes into effect are allowed to continue." Basset on Zoning, Chap. 5, p. 105. See also Biscay v. City of Burlingame, 127 Cal.App. 213, 15 P.2d 784.

It was established without direct contradiction that the defendant between May 20 and July 9, 1946 had: (1) procured a license to operate a branch "wrecker" business, (2) applied for a permit to construct a temporary office structure on the premises, (3) moved several old cars and trailers onto the lots in question, (4) commenced construction of a six foot fence to enclose the property, (5) at least made sales of used car parts (and in some instances installed the same on these premises) to witnesses Shragge, Powers, Gillom, Barcal and Lee Davis.

■ There was a very sharp conflict in the testimony as to the extent of defendant's activities at the 1333 E. Washington Street location, defendant maintaining that he or his sole employee spent a good deal of their time over there, while numerous witnesses, many of them residents of the neighborhood, testifying in rebuttal said that they had seen no one working nor any general business activity being carried on there, other than the fence construction which commenced about July 1, 1946. While it is not our prerogative to reconcile the apparent conflict in the testimony, the jury's answer to interrogatory No. 1:

"Was the business of an automobile wrecking yard transacted at premises known as 1333 East Washington Street, Phoenix, Arizona, between May 20, 1946 and July 9, 1946? Answer No."

is readily understandable, for the court had instructed them:

"Now ladies and gentlemen, in answering the interrogatory which the Court will present to you relating to the use or lack of use of the property at 1333 East Washington Street as an automobile wrecking plant on or before the 9th day of July, 1946, you are instructed that occasional or isolated instances of such use are not sufficient to show that the property was so used, but before you can answer such question in the affirmative, *you must find that the defendant was regularly engaged in carrying on such a business on said premises and that the activities thereon in this respect were conducted as a normal and continuous business.* That fact is not to be determined by the volume of business actually done by defendant but by the overt acts of the defendant evidencing the use to which he intended said property to be put during said period. * * *" (Emphasis supplied)

By this instruction the court impliedly gave the jury to understand that for defendant to establish a nonconforming use during this fifty day period prior to the adoption of the amended ordinance, that business must be practically continuously conducted on the premises. Such is not the law; as the amount or continuity of the business transacted is immaterial once the business is shown to have been commenced. Most of plaintiff's evidence on this score tended merely to minimize the amount of business transacted.

" * * * 'neither the extent, quantity, nor quality of the use is mentioned, but only that it must exist,' and 'neither the act, the ordinance, nor the law generally requires the court to speculate as to the number of acts or business transactions necessary to constitute an existing use,' but, 'as understood in the ordinance, "existing use" should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose.' Haller Baking Co.'s Appeal 295 Pa. 257, 261, 145 A. 77, 79. As the court further suggested in that opinion, ordinarily this utilization for the conduct of a business in such a case as the one before us combines two factors: (1) The adaptability of the land for the purpose; (2) the employment of it within that purpose; and, as was also stated, the use need not be in actual operation at all when the regulations took effect. * * *" De Felice v. Zoning Board of Appeals, 130 Conn. 156, 32 A.2d 635, 637, 147 A.L.R. 161; Chayt et al. v. Board of Zoning Appeals of Baltimore City, 177 Md. 426, 9 A.2d 747.

The requirements in cases on abondonment are somewhat analogous to the requirements to establish a business.

"Discontinuance of a non-conforming use results from the concurrence of two factors, (1) the intent to abandon and (2) some overt act or failure to act which carries the implication of abandonment."

Wood v. District of Columbia, D.C. Mun. App., 39 A.2d 67, 68.

Furthermore this instruction took no account of the fact that defendant's principal place of business was across the way on the north side of Washington Street and that at best the South side location was merely a branch thereof.

 We hold that the trial court was in error in adopting the finding of the jury on this point for the reason that the uncontroverted evidence heretofore set forth was legally sufficient to confirm the commencement and operation of the business. The fact of defendant's securing a permit clearly evidenced his intention to establish a branch "wrecker" business on the premises and the other admitted activities thereon constituted the necessary overt acts to establish a nonconforming use prior to July 9, 1946.

The plaintiff therefore was not entitled to judgment unless he established that defendant's business as conducted, prior to the trial, constituted a private nuisance. In the early stages of the trial the learned trial judge apparently took the view that an automobile wrecking yard was a nuisance per se but after hearing all the testimony he correctly instructed the jury that it was not; however he left it to the jury to determine whether the noise testified to was sufficient to constitute the business as conducted a nuisance. Their answer was in the affirmative. Does the evidence support such a finding?

Practically all of the testimony adduced by plaintiff's witnesses was to the effect that no activity was carried on at defendant's place of business, 1333 East Washington Street, and hence according to this theory, no noises could have emanated therefrom. However a single instance of offensive noise was shown to have occurred on September 11, 1946, when a motor was being removed from one of the cars.

It is obvious that as applied to a situation of this kind such an incident standing alone is wholly insufficient to sustain the issuance of an injunction. The maintenance of a nuisance ordinarily implies a continuity or recurrence of action over a substantial period of time. 39 Am. Jur., Nuisances, Sec. 22; 46 C.J., Nuisances, Sec. 47, p. 679.

 It has been uniformly held that the business of wrecking automobiles and salvaging the parts is not a nuisance per se. Perry Mount Park Cemetery Ass'n v. Netzel, 274 Mich. 97, 264 N.W. 303; City of New Orleans v. Southern Auto Wreckers, 193 La. 895, 192 So. 523. However, the conduct of such business may, in a particular instance, be held a nuisance depending upon the circumstances. Grundstein v. Ashland, 25 Ohio N.P., N.S., 493; Parkersburg Builders Material Co. v. Barrack, 118 W.Va. 608, 191 S.E. 368, 371, 192 S.E. 291, 110 A.L.R. 1454; see also annotation appearing same volume page 1461, entitled "Automobile wrecking or parking

place as a nuisance." We quote from the latter case:

"An automobile junk yard is not necessarily an objectionable place. The business of buying old automobiles, wrecking them and selling serviceable parts as such and junking the residue is an honorable and useful business. But an outdoor lay-out of a business of that kind necessarily is not pleasing to the view. Such business, therefore, should not be located in a community of unquestioned residential character."

The ground there relied upon for the injunction was mere unsightliness, it being in a semi-residential district where no zoning ordinances were in effect, but here as we have shown, the defendant may within the requirements of the zoning restrictions of the City of Phoenix lawfully operate a wrecking yard.

 While the factual situation was different in the case of Murphy v. Cupp, 182 Ark. 334, 31 S.W.2d 396, 401, the following quotation is apropos to the problem before us.

" 'The erection of a building to be used for a certain business will not be restrained on the ground of anticipating nuisance therefrom where it is not necessarily a nuisance but may become one under some circumstances. The anticipated injury being contingent and possible only, the court will refrain from interfering.'

Joyce on Nuisances, p. 226. Noise, in order to entitle one to an injunction, must be such as to produce a substantial injury, and the annoyance must be such as to injure or annoy a normal person. Of course it may be a nuisance merely by decreasing the value of the property, but, from the evidence in this case, it appears that all the annoyance and injury is anticipated and may never occur."

See also 39 Am.Jur., Nuisances, Sec. 47.

"The proof of nuisance must be clear and convincing, especially where it is sought to prevent the continuance of a lawful business, or to enjoin a threatened or apprehended nuisance as distinguished from an existing one." 39 Am.Jur. Nuisances Sec. 153.

See also 46 C.J. Sec. 380, p. 770; Kosich v. Poultrymen's Service Corportion, 136 N.J.Eq. 571, 43 A.2d 15; Benton v. Kernan, 130 N.J.Eq. 193, 21 A.2d 755. Damadio v. Levinsohn, 111 N.J.Eq. 84, 161 A. 504.

 The proper remedy for minor inconveniences arising from an alleged nuisance lies in action for damages, rather than injunction. MacDonald v. Perry, 32 Ariz. 39, 255 P. 494.

 We have reached the conclusion that the evidence is wholly insufficient to establish a nuisance or to sustain the trial court's action in granting an injunction. The judgment is therefore reversed, and

the cause remanded with direction to dismiss the complaint.

STANFORD, C. J., and LaPRADE, J., concur.