203 So.2d 204 (1967)
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, a Corporation, Appellant,
v.
Charles S. ROBUCK D/B/a Robuck Electric Sales and Service, Appellee.
NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, a Corporation, Appellant,
v.
Harold ELLZEY, Appellee.
Nos. I-390, I-391.
District Court of Appeal of Florida. First District.
October 5, 1967.
Rehearing Denied November 9, 1967.
*205 Charles S. Carrere and W. Roger Turner, of Gurney, Gurney & Handley, Orlando, for appellant.
Green & Simmons, Ocala, for Charles S. Robuck d/b/a Robuck Electric Sales and Service, appellee.
Harry C. Dozier, Jr., Ocala, for Harold Ellzey, appellee.
RAWLS, Judge.
National Union Fire Insurance Company has appealed from two final summary judgments in favor of the plaintiff-subcontractors in actions on a performance bond for a construction job.
The only question meriting consideration is, Does the practice of fraud by the principal upon the surety vitiate the surety's liability to the obligee who was not a party to the fraud? We answer this question in the negative and affirm.
The Teutons by written contract dated July 14, 1965, agreed to sell certain motel property to the Griggs for the purpose of constructing a shopping center in Ocala. This agreement provided for a down payment and future periodic payments secured by a note and mortgage. It further required that the Griggs would furnish the sellers a surety bond for the completion of the buildings.
Griggs was in the construction business and had previouly obtained a performance bond from National Union for the construction of another building in Ocala. On September 17, 1965, he presented to National Union an application for a bond for the construction of a shopping center on the Teuton's property. With the application he also presented a forged construction contract purporting to be one between Teuton and himself. The contract was on a standard AIA form and was dated September 17, 1965. Relying completely upon Griggs' application and the forged contract, John E. Lundy, an employee for National Union, executed a performance bond in the sum of $80,000, dated September 17, 1965, naming the Teutons as obligees, and referring to the September 17, 1965 contract. No investigation was made by National Union to determine the true facts.
The bond was submitted to the Teutons by Griggs, and on September 21, 1965, they deeded the property to Griggs. On that same day Griggs secured a construction loan in the sum of $80,000 from American National Bank of Jacksonville. Thereafter he began construction on the shopping center. When he had some financial difficulties, *206 National Union took a mortgage on several pieces of property owned by Griggs, and on February 23, 1966, had Griggs execute a trust agreement with an Ocala bank so that National Union could control disbursement of funds paid for the shopping center job. On May 30, 1966, Griggs abandoned the shopping center job.
Charles Robuck d/b/a Robuck Electric Sales and Service and Harold Ellzey, a plumbing contractor, brought these two actions against National Union on the performance bond to collect their mechanic's lien for labor, services and materials used on the shopping center job. National Union defended on the grounds, inter alia, that the bond was void ab initio due to fraud perpetrated upon it inducing it to issue same. This defense was stricken, and on motion, final summary judgments were entered for the plaintiffs on the pleadings, exhibits and depositions. National Union appealed.
Robuck's affidavit supporting his motion deposed that at the time he entered into the contract with Griggs, he knew the job was bonded, he relied upon it, and would not have otherwise entered into the contract. John E. Lundy, National Union's agent, could not remember making statements to subcontractors concerning the existence of a bond, but he deposed:
"We do follow standard or routine procedures in response to inquiries regarding whether or not a bond has been issued on a job. If a bond has been issued, we always indicate that a bond has been issued, without jeopardizing the rights of surety under that bond."
The general rule is that fraud practiced by the principal upon the surety does not affect the liability of the surety to the obligee unless the obligee was a party to the wrongdoing or concealed material facts from the surety when it was his duty to disclose them.[1] This holding is often explained on the ground that where one of two innocent parties must suffer from the fraud of another, the loss must be borne by the one who through his negligence or misplaced confidence has enabled the third party to consummate the fraud.
The above rule was followed by this court in Lambert v. Heaton,[2] wherein we held that the obligation of the surety to the obligee was not enforceable when the obligee participated in the wrongdoing.
Here there was a complete absence of any claim or evidence suggesting that the Teutons or the two subcontractors knew of the fraud, participated therein, or concealed same from the surety. On the other hand the positive testimony is that National Union chose to rely upon the statements in Griggs' application and upon the purported contract he submitted without making any inquiry of the Teutons as to the truth of the building contract referred to therein. Once armed with the bond Griggs was in a position to contract with the two plaintiffs who looked to the bond for assurance that they would be paid.
National Union contends that it bonded only the fictitious contract, and its obligation could not be extended in any manner. National Union undertook to bond the shopping center which was to be constructed by the principal Griggs. A surety's obligation is generally coextensive with that of the principal, and contracts of a surety for hire are construed most strongly in favor of the obligee.[3] A similar defense was presented in New York Indemnity Co. *207 v. May[4] which held that it was the duty of the surety, before executing the bond, to satisfy itself as to the true terms of the building contract referred to in the bond.
Appellant finally argues that Section 627.01081, Florida Statutes, F.S.A., voids the performance bond since Griggs' misrepresentations were fraudulent and material to the acceptance of the risk, and the surety, had it known the true facts, would not have issued the bond because it does not bond an individual against his own defalcations. That statute is contained in the portion of the Insurance Code which is generally applicable to all insurance contracts unless specifically excepted. Surety Insurance is not exempted therefrom. However, the above section is in conflict with a provision found in that part of the Code which states the law with reference to Surety Insurance Contracts. Subsection 627.0900(2) provides:
"Such a surety insurer may be released from its liability on any such bond on the same terms and conditions as are by law prescribed for the release of individuals, and shall be subject to all the rights and liabilities of natural persons." [Emphasis supplied.]
It is without question that a natural person having assumed the position of a non-gratuitous surety in reliance upon a principal's misrepresentations would be required to recognize its obligation to the obligee who had no knowledge of the fraud and was not a party thereto. Since the provisions of the code relative to a particular kind of insurance prevail over provisions relating to insurance in general,[5] we find that Section 627.01081 has no application here.
Affirmed.
WIGGINTON, C.J., and SPECTOR, J., concur.
NOTES
[1] National Union Fire Ins. Co. v. Peck, Tex.Civ.App., 296 S.W. 338 (1927); 50 Am.Jur., Suretyship § 170; 8 A.L.R. 1485; 66 A.L.R. 315; and 71 A.L.R. 1278.
[2] Lambert v. Heaton, 134 So.2d 536 (Fla. App.1st, 1961); See also Chrysler Corp. v. Hanover Ins. Co., 350 F.2d 652 (7th Cir., 1965).
[3] 30 Fla.Jur., Suretyship and Guaranty §§ 11 and 12.
[4] New York Indemnity Co. v. May, 37 Ariz. 462, 295 P. 314 (1931).
[5] Section 624.13, Florida Statutes F.S.A.