607 So.2d 432 (1992)
In re The Receivership of INTERNATIONAL FORUM OF FLORIDA HEALTH BENEFIT TRUST, a multiple employer welfare arrangement.
Appeal of ACTRON CONTRACTORS EQUIPMENT, et al., Appellants/Cross-Appellees,
v.
SOUTH BROWARD HOSPITAL DISTRICT, a Special Tax District of the State of Florida, d/b/a/ Memorial Hospital, et al., Boca Raton Imaging Center, Boca Raton Community Hospital, Coral Gables Medical Center, Inc., Dr. Terrance Ibbs, Hialeah Hospital, Inc., South Miami Hospital, Inc., St. Mary's Hospital, Inc., Appellees/Cross-Appellants.
Nos. 91-4044, 92-45.
District Court of Appeal of Florida, First District.
September 17, 1992.
Rehearing Denied October 27, 1992.
*434 Arthur J. England, Jr., Seth Stopek, and Charles M. Auslander of Fine Jacobson Schwartz Nash Block & England, Miami, for appellants/cross-appellees.
Michael L. Berry, Dennis K. Threadgill, Robin C. Nystrom, and Mary Beth Perry, of Florida Dept. of Ins. as Receiver of International Forum of Florida Health Benefit Trust, H. Lawrence Hardy of Bacen & Kaplan, P.A., Fort Lauderdale, Alan M. Fisher of Law Offices of Alan M. Fisher, and Jay M. Levy of Jay M. Levy, P.A., Miami, for appellees/cross-appellants.
ERVIN, Judge.
These consolidated cases involve one aspect of the collapse of International Forum of Florida Health Benefit Trust (IFF), a multiple-employer welfare arrangement (MEWA), which is a statutorily authorized employee benefit plan providing health insurance to the employees of participating employers. Appellants/cross-appellees are approximately 150 participating employers who are policyholders of the IFF MEWA. Appellee Department of Insurance (department) licensed and regulated IFF and is currently acting as receiver of IFF, which is in liquidation. Appellees/cross-appellants, South Broward Hospital District and Boca Raton Community Hospital, et al., are health care providers who have supplied medical care and services to employees of the employer/participants and are seeking payment of claims therefor. Because the laws governing MEWAs are so recent, and consequently have not been the subject of much litigation, this appeal raises many issues of first impression.
Appellants and cross-appellants appeal the order of the trial court authorizing an assessment against appellants under Section 624.4415, Florida Statutes (1989). Appellants challenge the assessment on a number of grounds, particularly the court's refusal to consider appellants' defense that IFF, with the complicity of the department, fraudulently induced appellants to purchase health insurance through IFF. More specifically, appellants contend that (I) fraudulent inducement is an absolute defense to this assessment, (II) the department should be estopped from imposing the assessment, (III) the assessment is void for lack of notice that employers would be assessable, (IV) individual policyholders of IFF cannot be assessed, (V) the procedure followed by the trial court violated the due process rights of those assessed, (VI) the federal Employment Retirement Income Security Act (ERISA) preempts the assessment, and (VII) the assessment was improperly calculated. Cross-appellants contend that the trial court erred in (VIII) limiting liability for those assessees who pay 50 percent of their assessment within a specified time, (IX) directing that only those claims arising after October 1, 1989, be paid through the assessment, and (X) releasing the employees and employers from claims that have been filed with the receiver. Health care providers South Broward Hospital District, et al., claim that (XI) they are entitled to a legal remedy if this court concludes on appeal that assessment is improper. We affirm issues II, III, *435 IV, V, VI, VII, VIII, IX, and XI, and reverse issues I and X.
The Florida Legislature enacted the Florida Nonprofit Multiple-Employer Welfare Arrangement Act in 1983, which has gone through several amendments and is codified at Sections 624.436 through 624.44, Florida Statutes (1989). The purpose of the act is to permit existing groups of employers to provide collective health insurance benefits for their employees. § 624.437(1), Fla. Stat. (1989). The act permits MEWAs to be sponsored solely by trade, industry, or professional associations and requires all MEWAs to be operated by a board of trustees consisting of owners, partners, officers, directors, or employees of the employers participating in the plan. § 624.438(1), Fla. Stat. (1989). Coverage is intended to be available only to employees of the sponsoring association.
As will be discussed below, there was no evidentiary hearing in this case.[1] On April 20, 1990, the department obtained an order from the court placing IFF into receivership for liquidation and thereafter requested a status report, which was prepared by W. Michael Heekin of the Florida State University College of Law. The following recitation of "facts" is taken primarily from this report and does not articulate any factual findings by the court below. Professor Heekin examined the operation of IFF from its inception in October 1987 through its demise three years later. He found incompetence and self-dealing within IFF management, inability of third-party administrators to process claims and provide information necessary for determining the trust's financial health, ambiguous and incomplete statutory provisions, and regulatory neglect and mistakes in the department's review of IFF's application and ongoing operations. The report also makes critical findings regarding IFF's failure to reserve sufficient funds for handling claims and its disproportionate expenditures on nonclaim items, particularly in the area of marketing. IFF moreover had two third-party administrators who did not perform satisfactorily in paying claims and maintaining financial records. The lack of financial information impaired the department's ability to monitor the condition of IFF, and a massive claims backlog diverted the department's attention from the financial management of the MEWA. An accountant for IFF warned management in late 1988 that the trust was heading for serious financial problems and that it was engaging in certain transactions that might be illegal. IFF's annual statement submitted to the department in 1988 also indicated inadequate reserves and failed to include a statutorily required analysis of such reserves. In early 1989, the department conducted an examination and concluded that IFF was substantially in arrears in paying claims and that the trust was insolvent in spite of the trust's statements reporting a positive net worth.
On October 1, 1988, Section 624.4415 became effective,[2] providing that MEWAs would be authorized to assess employer/participants for shortfalls in funds if the arrangement's balance of funds showed a deficit. MEWAs licensed before October 1, 1988, which included IFF, were required to notify employer/participants of their liability for assessments by September 30, 1989. The department sent IFF a memorandum dated August 28, 1989 from the Insurance Commissioner to IFF's participating employers, informing the MEWA participating employers of the new assessment liability provision. Shortly thereafter, on September 7, 1989, the chairman of IFF sent a letter to the employer/participants, to which the department's memorandum was attached, stating that IFF was "constantly working with" the department to "assure a solvent quality trust for its membership," and that IFF did not "anticipate any financial difficulties," but that it would provide the employer participants with assessment insurance in "the unlikely event of assessability." It was a matter of dispute whether this letter was, in fact, sent to the participating employers.
*436 Notwithstanding the department's memorandum, the department concluded a full financial audit of IFF in August 1989, which confirmed that IFF was operating with a negative fund balance of $1,848,574 as of June 30, 1989. The department, however, took no action to suspend IFF's certificate of approval. Despite continued deficiencies, statutory omissions, and the department's receipt of complaints regarding IFF's backlog of claims payments, IFF continued to operate and informed the department on October 27, 1989 that it had infused $3,000,000 into the trust through the assignment of GNMA certificates. Notwithstanding two separate deadlines set by the department in which IFF was required to eliminate its claims backlog, the deadlines passed and the backlog remained. Finally, in April 1990, the department petitioned the Circuit Court of Leon County for an order appointing itself as receiver for the purpose of liquidating IFF, which was granted. The receiver thereafter estimated that IFF had accumulated $16,000,000 in unpaid claims before and after the assessment provision was enacted.
On November 9, 1990, the receiver petitioned the court for instructions relating to the assessment. On December 20, the court entered an order directing formation of a committee of representatives of the health care providers, participating employers, and employee/insureds for the purpose of obtaining various viewpoints regarding the possibility of an assessment. The receiver submitted a report summarizing the committee's deliberations on March 30, 1991, and the court entered an order on those recommendations on June 13, 1991. On August 6, 1991, a hearing was held on objections filed to the order, and the court thereafter appointed an attorney ad litem to investigate allegations of fraud, particularly for the purpose of determining whether the department's memorandum of August 28, 1989, IFF's letter of September 7, 1989, and an accompanying letter confirming the availability of assessment liability insurance, combined to fraudulently induce employers and others to purchase IFF policies. The attorney ad litem submitted a report on September 23, 1991, concluding that IFF had committed fraud.
Following the report of the attorney ad litem, the court entered the order now being appealed. The court concluded that assessment was the "least bad solution in a situation where there are no good choices." The court directed that claims arising after October 1, 1989 be paid through assessment, and that claims arising prior to that date be paid by funds the receiver collected separately. The court stated that the assessment would be calculated as follows:

 Post 1 October 1989 Claims $ 8,888,842.37
 50% Uncollectible Assessment Factor $ 4,444,421.19
 15% For Costs of Levying The Assessment $ 1,333,326.36
 7 1/2% Claims Evaluation Cost $ 666,663.18
 5.6% For the Receiver's Administrative Expenses $ 500,000.00
 Total Assessment Base For Post
 October 1, 1989 Claims $15,833,253.10

The court vented its outrage at the actions of IFF management and directed the receiver to continue its lawsuit against IFF using funds raised through the assessment. Finally, the court disallowed the employers' defense of fraud in the inducement as a bar to assessment, rejecting the result reached by the Fourth District in Arad v. Caduceus Self Insurance Fund, Inc., 585 So.2d 1000 (Fla. 4th DCA 1991), and adopting the reasoning of In re State Mutual Litigation, No. 87-40134-WS (N.D.Fla. Nov. 3, 1988), vacated on other grounds, No. 87-40134-WS (N.D.Fla. Mar. 9, 1992). In Arad, the Fourth District had ordered rescission of a physicians' self-insurance trust rather than permitting assessment against the individual physicians who were insured against malpractice by the trust. The court below *437 distinguished Arad as involving an assessment which had been made against the insureds to pay the claims against them, whereas in IFF, the assessment would be made against the employers for the benefit of the insured employees. It was the lower court's opinion that if rescission were allowed, its effect would be to release the employers from their obligation and to harm the employees for whom the employers selected the MEWA plan of health insurance. The court concluded that the insured employees were the least able to protect themselves in this situation. In reaching its decision, the court approved the reasoning of Judge Stafford in In re State Mutual Litigation, who rejected the defense of fraudulent inducement by a surety, relying on the general rule that "`where one of two innocent parties must suffer from the fraud of another, the loss must be borne by the one who through his negligence or misplaced confidence has enabled the third party to consummate the fraud.'" In re State Mutual Litigation, slip op. at 12 (quoting National Union Fire Ins. Co. of Pittsburgh, Pa. v. Robuck, 203 So.2d 204, 206 (Fla. 1st DCA 1967)).
The lower court moreover found that any assessee who paid 50 percent of its assessment within 90 days would be deemed to have paid its assessment in full and would not be subject to further assessment. Finally, the court held that health care providers who filed claims with the receiver would be deemed to have "forever and irrevocably released" the employers and employees from all liability for such claims. This appeal followed.
As to issue I, relating to fraudulent inducements, because the assessment provisions are designed, in part, to protect employees, the court's equitable decision[3] to assess the employers is supported by the long-established equitable principle recognizing that if two innocent parties are injured by a third, either by negligence or fraud, the one who made the loss possible must bear legal responsibility. Exchange Bank of St. Augustine v. Florida Nat'l Bank of Jacksonville, 292 So.2d 361, 363 (Fla. 1974); Niccolls v. Jennings, 92 So.2d 829, 832-33 (Fla. 1957); Inman v. Rowsey, 41 So.2d 655, 659 (Fla. 1949); Griffin v. Gulf Life Ins. Co., 146 So.2d 901, 903 (Fla. 1st DCA 1962). Appellants claim that the trial court's concern for the employee/insureds was misplaced, in that no employees will be liable for payments beyond their co-payments and/or deductibles. We are troubled by appellants' contention, because if it is true that no employees are liable for any claims, the entire rationale for the trial court's equitable decision would be unfounded. Appellants refer to three preferred provider agreements between the MEWA and the providers appended to their reply brief. At the hearing below, conducted before the court entered its final order, counsel for the employers contended that the preferred provider contracts barred any claims against the employees, while counsel for the providers repeatedly contended that the employee/insureds, as well as the employers, would be liable for payments absent the assessment. This, therefore, was a factual dispute, yet the trial court reached a legal conclusion without first determining on the record a factual element necessary for that conclusion, i.e., that the employees would be liable absent assessment. Upon review of these provisions, it appears that the provider could arguably pursue a direct claim against an employee member. Nevertheless, this is a matter for initial decision by the trier of fact, not the appellate court. Because no evidentiary hearing was held or factual findings made, there is no way to evaluate appellants' contention. It is for this reason that we reverse that portion of the order on review in which the trial court refused to permit appellants to raise their asserted defense, and remand to permit the court to make findings on this issue.
As to issue II, we affirm the trial court's refusal to consider appellants' affirmative *438 defense of estoppel against the department. As appellees point out, "A receiver is not a party in the cause. The receiver is an officer of the court and is subject to the supervision and control of the court." Fugazy Travel Bureau, Inc. v. State ex rel. Dickinson, 188 So.2d 842, 844 (Fla. 4th DCA 1966). Accord Edenfield v. Crisp, 186 So.2d 545, 549 (Fla. 2d DCA 1966) (a receiver is the agent of the court); Abramson v. Brant, 141 So.2d 777, 778 (Fla. 3d DCA) (property in the hands of a receiver is legally in possession of the court), cert. denied, 146 So.2d 752 (Fla. 1962).
As to issue III, appellants claim they had no notice of assessment liability, thus the assessment is void. Section 624.4414(2), Florida Statutes (1989), provides:
Each employer participant shall have a contingent assessment liability pursuant to s. 624.4415 for payment of actual losses and expenses incurred while the policy was in force.
Section 624.4415(2) provides:
For those multiple-employer welfare arrangements which have a valid certificate of authority before October 1, 1988, the arrangement shall comply with this section and s. 624.4414 by September 30, 1989.
Section 624.4414(3) requires each policy to contain a statement of the assessment liability. These provisions took effect October 1, 1988. Ch. 88-116, §§ 3, 4 & 6, Laws of Fla. In reading the statutes together, it appears that the MEWA was required by law to inform the employers of their assessment liability. Therefore, appellants' point is well taken that IFF was required to give actual notice to the employers. Because no discovery was permitted on this issue, however, the brief testimony of witness Martin Sosso cannot serve to establish actual notice.[4]
Nevertheless, pursuant to the provisions of Section 631.331(1), Florida Statutes (1989), the court was authorized to order an assessment based only upon the department's report, and the assessment is prima facie correct at this stage of the proceedings. The parties represent that individual assessment hearings will follow during which issues such as notice may be decided. Therefore, we agree with the department that the defense of lack of actual notice may be raised at each employer's assessment hearing.
Appellants claim in issue IV that policies were illegally sold to individuals as well as employers, and that these contracts cannot now be enforced. The trial court apparently concluded that individuals should be assessed, because it imposed its order against "all persons or entities who paid any premiums to IFF for the period October 1, 1989 through ... May 19, 1990." (Emphasis added.) Appellants rely upon two cases in which the general rule is stated that a contract should not be enforced if the enforcement is contrary to the public policy of the state. American Casualty Co. v. Coastal Caisson Drill Co., 542 So.2d 957, 958 (Fla. 1989); Title & Trust Co. of Fla. v. Parker, 468 So.2d 520, 523 (Fla. 1st DCA 1985). The department responds that because these individuals are not employers, the assessment laws do not authorize assessment against them, but that, on the other hand, the bona fide employers did not contract to be assessed for the claims of those not subject to assessment.
We conclude that enforcement of the contracts furthers the public policy of the MEWA laws, which is to protect employees *439 and member employers.[5] The assessment was clearly imposed to benefit the employees, and it benefits member employers as well by spreading the liability to all policyholders. This is not a case, therefore, in which IFF would itself be benefiting from its procurement of illegal contracts. Appellants have failed to show that this decision was inequitable.
In issue V, appellants claim that the summary procedure in which the assessment was imposed violated their right to due process, because they were denied the opportunity to present evidence on their defenses of estoppel and fraud in the inducement. We disagree. There was no reason for the court to hear proof supporting the defense of estoppel against the department in that the department was not a party to the proceeding. See issue II, supra. Regarding the fraud defense, if the trial court on remand of issue I determines that the defense may be asserted, such proof, which requires a showing of individual reliance upon material misrepresentations, must be presented in the individual assessment hearings. Cf. Lance v. Wade, 457 So.2d 1008, 1011 (Fla. 1984) (in a case involving multiple contractual sales, each plaintiff must establish individual reliance upon the fraudulent representation, thus precluding a class action for fraud in the procurement of the separate contracts).
Appellants next claim, in issue VI, that ERISA preempts state law authorizing assessment. Under Title 29 United States Code Section 1144(a), any state law that "relates" to employee benefit plans is preempted by ERISA. The savings clause in Section 1144(b)(2)(A), however, provides that state laws that "regulate insurance" are not preempted. Section 1144(b)(2)(B), the "deemer" clause, provides that any state law regulating insurance cannot deem an employee benefit plan to be an insurance company or "other insurer." Section 1144(b)(6)(A)(ii), relates specifically to MEWAs and further limits the preemptive effect of ERISA, providing that MEWAs that are not fully insured are subject to any state statute that regulates insurance so long as state law is not inconsistent with any provision of ERISA. Florida Auto. Dealers Indus. Benefit Trust v. Small, 592 So.2d 1179, 1181 (Fla. 1st DCA 1992). Subsection (b)(6)(A), regarding MEWAs, was added to the preemption statute in 1982. "At that time, out of concern over the lack of effective regulation for these often under-funded arrangements, Congress compromised ERISA's preemptive control in this limited area, and recognized a permissive grant of regulatory authority to states to oversee the activities of MEWAs." In re Affiliated Food Stores, Inc. Group Benefit Trust, 134 B.R. 215, 220 (Bankr. N.D.Tex. 1991) (footnote omitted). Florida is one of a limited number of states that have enacted laws regulating self-insured MEWAs. Id. at 221.
Appellants list a number of ERISA provisions that contain enforcement procedures and claim that none includes the remedy of assessment against employers. This is not the test, however. Appellants must show that an ERISA provision is inconsistent with the state's assessment law, and this they have failed to do.
Appellants next claim in issue VII that even if the assessment is proper, Section 624.4414(2)[6] limits assessments to actual losses; thus, the trial court erred in including the 50 percent uncollectible assessment factor, 15 percent costs for levying the assessment, 7 percent claims evaluation costs, and the 5.6 percent receiver's administrative expenses, in reaching its total assessment base for claims filed after October 1, 1989. On the contrary, Section 624.4415(5)(d) provides:
The department shall have the authority to assess, as set forth in this section, all employers for all necessary funds in the event of the liquidation or the rehabilitation of the multiple-employer welfare arrangement.
The phrase in Section 624.4414(2) that imposes assessment liability on employers for "payment of actual losses and expenses *440 incurred while the policy was in force" includes the funds necessary for liquidation as an expense incurred when the policy was in force. If the assessment could only be used to pay actual claims, then the assessment could not be collected, because costs of collection would not be covered. Moreover, because an assessment can only be imposed against those employers who had notice, see issue III, each employer who did have notice was apprised of the IFF contract provision stating: "In the event the arrangement is unable to pay its obligations, policyholders (employers) will be required to contribute on a pro rata earned premium basis the money necessary to meet any unfilled obligations." (Emphasis added.) In addition, Section 631.321(1), Florida Statutes (1989), permits the court to assess
in such an aggregate amount as the court finds reasonably necessary to pay all valid claims as may be timely filed and proved in the delinquency proceeding, together with the costs and expenses of levying and collecting assessments and the costs and expenses of the delinquency proceeding in full.

(Emphasis added.)
Appellants also object that because assessments will be imposed based upon "earned premiums," employers who paid their October 1989 premiums in September 1989 would not have such premiums included in the assessment base. The receiver states in its answer brief, however, that assessments will be adjusted during the individual hearing proceedings to include premiums paid prior to October 1, 1989, and we rely upon that representation in our affirmance of this issue.
We now address the four issues raised in the cross-appeal. In issue VIII, cross-appellants/health care providers object to the 50 percent discount for assessees who pay the same within 90 days, pointing out that there is nothing in the statutes or contract that would permit such a discount. There is, however, no fixed formula included in the statutes that dictates the means by which the court must collect an assessment. Sections 631.001(3) and 631.001(4)(d), Florida Statutes (1989), require a liberal construction of the laws within chapter 631 for the purpose of, among other things, equitably apportioning unavoidable losses. Presumably, the lower court devised the 50 percent discount factor in order to increase the prospects of collection, which was within its equitable discretion.
As to issue IX, the providers claim that the employers should be assessed both before and after October 1, 1989, because the IFF contract for benefits makes no distinction between years in which an employer shall be assessed. Nevertheless, we read Section 624.4415(2), which requires MEWAs with certificates of authority issued before October 1, 1988 to comply with the assessment statutes by September 30, 1989, as a statement that an assessment provision would not be incorporated into MEWA contracts, and consequent liability for assessment would not be applicable, until October 1, 1989.
In reaching our decision, we obtained and reviewed the staff analyses of the House and Senate versions of Chapter 88-116, Laws of Florida, at the Florida Archives, and each states that "[e]xisting MEWAs will not be assessable until September 30, 1989." Staff of Fla.H.R.Comm. on Ins., HB 1555 (1989), Staff Analysis 2 (final June 21, 1988) (Fla. State Archives); Staff of Fla.S.Comm. on Commerce, CS/SB 619 (1989), Staff Analysis 2 (Apr. 20, 1988) (Fla. State Archives). We agree with appellants that imposing an assessment on employers who held policies prior to October 1, 1989 would constitute an unconstitutional impairment of pre-October 1, 1989 contracts. See, e.g., Pomponio v. Claridge of Pompano Condominium, Inc., 378 So.2d 774 (Fla. 1979) (statute that required a lessor to deposit rents into court registry during litigation over a condominium lease, could not be applied retroactively in that the lessor had not expressly consented to incorporation of the provision into the lease).
As to issue X, the providers assert that the court had no authority under Section 631.193, Florida Statutes (1989), to release the employers and employees from further liability upon the filing of a claim by a provider with the receiver. Moreover, the providers argue that the filing of their claims should not release employees from *441 liability for pre-October 1, 1989 claims. Section 631.193 provides, in part,
The filing of a claim constitutes a release of the insured from liability to the claimant to the extent of the coverage or policy limits provided by the insolvent insurer.
(Emphasis added.) The Third DCA held in Ramos v. Jackson, 510 So.2d 1241 (Fla. 3d DCA 1987), that once a party has elected to file a claim with a receiver, rather than seeking direct relief against the insured, the election may not be withdrawn. It appears that, pursuant to Ramos, the providers elected to file a claim with the receiver; therefore, they must abide by the court's decision which is to preclude claims for services prior to October 1, 1989. Having elected to seek relief under the insolvency chapter, the providers cannot withdraw their election. Notwithstanding this, we conclude that only the employees in the case at bar fall under the term, "the insured[s]," and that the trial court erred in extending this statute to require a release of employers as well. The trial court's order is reversed, insofar as it purports to release employers from further liability upon the filing of any claims with the receiver for services by the providers rendered before October 1, 1989. By construing the statute in this manner, we express no opinion as to the existence of any cause of action by the providers against the employers. We simply hold that should any such cause of action exist, the same is not barred by the statute.
Finally, in regard to issue XI, South Broward Hospital District asks this court, if it determines the assessment to have been erroneous, to direct that a further legal remedy be permitted to the health care providers. In light of our decision reached under issue I, this issue is premature.
We AFFIRM IN PART, REVERSE IN PART, and REMAND for further consistent proceedings.
SMITH and KAHN, JJ., concur.
NOTES
[1] The testimony of only one witness was taken. See issue III, infra.
[2] Ch. 88-116, §§ 4 & 6, Laws of Fla.
[3] Section 624.446, Florida Statutes (1989), authorizes the department to supervise the liquidation of a MEWA under the laws governing liquidation. Chapter 631, Florida Statutes (1989), governs rehabilitation and liquidation of insolvent insurers. Section 631.021(1), Florida Statutes (1989), provides, in part: "Any delinquency proceeding in this chapter is in equity."
[4] Sosso testified at the hearing that a September 7, 1989 letter from IFF chairman George Doherty was sent to agents informing them of the assessability provision. We do not consider evidence of a letter sent to agents as establishing that such information was provided to the employers. Sosso also read into the record a notarized document signed by Doherty on September 15, 1989, which stated, "I hereby certify that the International Forum of Florida Health Benefit Trust has sent the mutually agreed upon notification regarding the multiple employer welfare arrangement assessability clause under the authority of Statute 624.4415, to all employers enrolled in the Trust according to instructions set forth by the Department of Insurance." We do not find this document anywhere in the record. Sosso then testified that a computer list was generated indicating the employers to whom the notice was sent, and that that document was among those seized by the state and in possession of the department.
[5] See, e.g., § 624.441(1), Fla. Stat. (1989).
[6] See Section 624.4414(2), supra issue III, at page 438.