BARFIELD, J.
Appellants are members of the Florida Employers Safety Association Self-Insurance Fund (FESA), which was organized in 1990 under section 440.57, Florida Statutes, to provide workers’ compensation coverage for the employees of its members. As required for approval by the Florida Department of Labor and Employment Security, FESA’s members signed an indemnity agreement binding them jointly and severally to pay premiums and assessments into a cash reserve fund, from which the workers’ compensation claims would be paid. In 1993, section 440.57 was amended and transferred to section 624.4621, which requires the Department of Insurance to adopt rules requiring such self-insurers to maintain monetary reserves, to carry reinsurance, and to participate in the Florida Self Insurance Fund *288 Guaranty Association (Guaranty Association). The purposes of the “Florida Workers’ Compensation Insurance Guaranty Association Act,” Part V of chapter 631, Florida Statutes, include creating “a mechanism for the payment of covered claims under chapter 440 to avoid excessive delay in payment and to avoid' financial loss to claimants because of the insolvency of a member insurer.”
In 1996, FESA was discovered to be insolvent, allegedly as the result of “fraudulent and wanton mismanagement” by its administrator and others. In an October 22, 1996, consent order, the Department of Insurance was appointed as FESA’s Receiver for purposes of liquidation, and was authorized, inter alia, to “[c]alculate any necessary assessments pursuant to sections 624.474, 624.476, Florida Statutes, and utilize the assessment collection procedure set forth in sections 631.311, 631.321, and 631.331, Florida Statutes.”
On October 15, 1999, pursuant to section 631.311, the Receiver timely filed its report and petition for an order approving and directing assessment of FESA’s members. It calculated the amount “reasonably necessary to pay all claims, the costs and expenses of the collection of the assessments, and the costs and expenses of the delinquency proceeding in full,” as well as each FESA member’s share of the assessment, and recommended that each member be offered a one-third discount for prompt payment of its share of the assessment. The trial court approved the Receiver’s report and calculations as reasonable, and ordered the assessment of FESA’s members in accordance with the Receiver’s petition, authorizing the Receiver to set a date for payment of the assessment.
Upon motion by some FESA members after assessment notices were sent, the court entered a supplemental order extending the payment due date pending discovery and consideration of the members’ objections and defenses regarding the assessment. It ordered the Receiver to provide the FESA members with documentation of its assessment calculations and an opportunity to depose the people involved in the assessment. Over four hundred FESA members filed objections and defenses to the assessment. At the hearing in April 2000, the court declined to consider any “objections related to some matter other than the methodology and the calculation and the classification for the determination of the assessment,” noting that the other objections and defenses would be heard “at the next hearing.”
After considering the arguments of the parties, the court ruled that the “prima facie correct” language of section 631.331(1) creates a presumption under section 90.302(2) “that imposes upon the party against whom it operates the burden of proof concerning the nonexistence of the presumed fact.” It adopted the standard of proof set out in Caldwell v. Division of Retirement, Florida Dept. of Administration, 372 So.2d 438 (Fla.1979): “[I]f there is evidence supporting the presumption, [the party opposing] can overcome the presumption only by clear and convincing evidence.”
Following extensive presentation of evidence, the court observed that the opinions of the experts were conflicting “with respect to all of the matters in the assessment concerning the estimated loss development and the loss reserves, loss expenses reserve and the liabilities,” but that it had not been convinced “by clear and convincing evidence to the contrary that these assessments are incorrect or are unreasonable.” It found that the $9.2 million allocated for costs of collection, which was based upon the Receiver’s contract with its attorneys, was “an allowable item of *289 correctness” and that there was “nothing in the evidence that would indicate that how that was arrived at was in any way improper or arrived at on an unsound basis.” It disapproved, in this “initial assessment,” the $20 million “uncollectibles” allowance, finding “[nothing] in the statutory scheme that directly permits it” and no expert opinion on the record that the amount was reasonable, but noted that if some of the members do not pay this assessment, “there may be a call for additional funds to make the liability whole, which was borne by all.”
In motions for summary judgment, FESA members asserted various claims, including that the assessment was barred by fraudulent inducement, that the Receiver’s cause of action had not yet accrued, that the assessment was barred by the five-year statute of limitations governing actions on a contract and by the doctrine of laches, that the Receiver lacked authority to assess FESA members to reimburse the Guaranty Association for claims it had paid on their behalf or for loss reserves or incurred-but-not-reported losses, and that the $9.2 million attorney fee for collecting the assessment was not authorized until the members had failed to pay the assessment. On June 6, 2000, after hearing extensive argument by the parties, the court entered an order denying all the motions for summary judgment. On June 7, 2000, it entered an order which, inter alia, reduced the aggregate assessment by the amount allocated for uncollectible assessments, approved the resulting assessment, and explained that the ruling determining that the issues raised in the motions for summary judgment were “insufficient defenses as a matter of law” would be “the law of the case.”
Some FESA members have appealed these orders, raising five issues, none of which have merit. The trial court correctly ruled that the “clear and convincing evidence” standard was applicable in the hearing on the challenges to calculation of the assessment, based on the common law presumption, embodied in the “prima facie correct” language of section 631.331(1), that public officials dispatch their duties in accordance with the law. The other four issues concern the trial court’s denial of the motions for summary judgment based on claims that the assessment was barred by fraudulent inducement, that the Receiver’s cause of action had not yet accrued or the assessment was barred by the five-year statute of limitations governing actions on a contract, that the Receiver lacked authority to assess FESA members to reimburse the Guaranty Association, and that the $9.2 million attorney fee for collection of the assessment was not authorized and lacked an evidentiary basis.
Appellants did not present sufficient evidence to prove the elements of fraudulent inducement, and such a defense would have to be proven individually for each FESA member challenging the assessment. See In re International Forum of Florida Health Benefit Trust, 607 So.2d 432, 439 (Fla. 1st DCA 1992), review denied, 618 So.2d 210 (Fla.1993) (IFF). Moreover, the trial court’s equitable decision to assess the FESA members even if fraud in the inducement were proven, is supported by the “long-established equitable principle” set out in IFF, which recognizes that if two innocent parties are injured by the fraud of a third party, “the one who made the loss possible must bear legal responsibility.” Id. at 437.
The five-year statute of limitations for an action on a contract, section 95.11(2)(b), Florida Statutes, would not be applicable in this assessment proceeding unless appellants were to breach the FESA indemnity agreement by failing to pay the assessment. The only applicable *290 limitations period at this stage of the receivership proceeding is the three-year period after entry of the order of liquidation provided by section 631.311, within which the Receiver timely filed its petition seeking approval of the assessment.
Section 631.321(1) authorizes the Receiver to include in the assessment the costs of collection.[1] Id. Section 631.141(6) provides for the Receiver’s employment of attorneys in delinquency proceedings, to be compensated from the assets of the insolvent insurer, subject to the approval of the court. In Haag v. State, Dept. of Ins., 699 So.2d 738 (Fla. 1st DCA 1997), review denied, 717 So.2d 532 (Fla.1998), this court ruled that the trial court is required to determine the reasonableness of the Receiver’s attorney fee agreement required by section 631.141(6), and is not required to adopt the lodestar approach applied in statutory fee-shifting .cases pursuant to Florida Patient’s Compensation Fund v. Rowe, 472 So.2d 1145 (Fla.1985), and Standard Guar. Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla.1990). The record supports the trial court’s determination that the Receiver’s attorney fee contract, upon which the costs of collection of the assessment was based, was reasonable.
Finally, we decline to recede from our opinion in Southeastern Staffing Services, Inc. v. Florida Dept. of Ins., 728 So.2d 248 (Fla. 1st DCA 1998), appeal dismissed, 766 So.2d 223 (Fla.2000), in which we rejected the argument, also presented here, that the law does not authorize assessments to reimburse the Guaranty Association.
The challenged orders are AFFIRMED.
WOLF and LEWIS, JJ., concur.

. In 1994, the workers' compensation self-insurance funds, including FESA, became subject to the provisions of chapter 631, Florida Statutes. FESA members thereafter joining FESA or continuing their membership in FESA are deemed to have incorporated the statutory obligations of chapter 631 into their continuing contract. If the instant assessment includes employers that did not remain members of FESA after it became subject to chapter 631, those employers may have a valid claim that their only liability for attorney fees arises from the indemnity agreement. However, no such allegation was made in the trial court or in the briefs on appeal, and the trial court's order provides for individual hearings in which such claims could be heard if they were to be raised.